[No. G012761. Fourth Dist., Div. Three. June 25, 1993.]

PAUL McCAULEY, Plaintiff and Appellant, v.
BFC DIRECT MARKETING et al., Defendants and Respondents.

## COUNSEL

Rosenberg, Nagler & Phillips, Gary S. Phillips and Anthony Kornarens for Plaintiff and Appellant.

Manatt, Phelps & Phillips, David Elson, Ronald B. Turovsky and Brad W. Seiling for Defendants and Respondents.

## OPINION

**SILLS, P. J.**—We can safely say, without fear of contradiction, that the attorneys in this case know their way to the Court of Appeal. Before this

latest round, the various parties had petitioned this court for some type of extraordinary relief on no less than five occasions, resulting in four summary denials and one unpublished opinion.[1] If we could issue frequent flyer miles, these parties would qualify for a free trip somewhere.

This case finally reached an "appeal" posture when defendant BFC Directing Marketing, along with its principals, William Butcher and Arnold Forde (collectively BFC), prevailed on a summary judgment motion. For the reasons that follow, we reverse.

## FACTS

Defendant California Tax Reduction Movement (CTRM), which is not a respondent here, was founded by tax crusader Howard Jarvis shortly after Proposition 13 was passed in 1978. Sometime in 1984, CTRM organized a political action committee known as the "Committee of Over One Million Taxpayers to Save Proposition 13, a Project of CTRM" (Million). The purpose of "Million" was to support Proposition 36, another tax initiative, on the November 1984 state ballot. McCauley's complaint, brought as a private cause of action under Government Code section 81002, subdivision (f), alleged that "Million" raised and contributed to CTRM the sum of $466,000 between October and December 1984, and CTRM used that and other money for the advancement of various political causes in California and elsewhere. McCauley further alleged that defendants should have filed statements with the Secretary of State to report these contributions and expenditures, as required by Government Code sections 84101 and 84200.

Before this case was assigned to one judge for all purposes under the superior court's direct case management system, BFC moved for summary judgment. Among other things, BFC asserted it was not responsible for any alleged reporting violations as a matter of law under Government Code sections 83116.5 and 91015, because those sections limit liability to the committee itself and its treasurer. The law and motion judge (Judge Eileen Moore) denied summary judgment on this ground "because it's not an issue raised in the pleadings." The court then added: "Considering Mr. Elson's suggestion that the answer be amended to state affirmative defenses based on Government Code section 83116.5 and Government Code section 91015, I don't think that that would solve the problem that is before the court as of now because it's still going to be a question of fact as to who was treasurer

---

[1] In *California Tax Reduction Movement v. Superior Court* (Aug. 5, 1991) G010629, we held that the superior court did not abuse its discretion in finding plaintiff sufficiently indigent to justify waiving the requirement of posting a $60,000 bond under Government Code section 91012.

of C.T.R.M. and whether or not it was B.F.C., but issue one is denied without prejudice for B.F.C. to bring this issue again, should further evidence become available or known on this issue.

"........................

"If there is something existing that you did not bring before the court, that is your problem. If there is something new that you find out, you may bring another motion based upon those same issues."[2]

Despite Judge Moore's admonition that amending the answer would not "solve the problem," BFC amended its answer to allege Government Code sections 83116.5 and 91015 precluded any liability. By this time, the case had been assigned to Judge Velasquez for all purposes. BFC then renewed its motion for summary judgment. David Elson, counsel for BFC, later stated: "I will readily admit it was virtually word for word the same. We did it on purpose because we thought we had a legal issue the first time. We thought we had a legal issue the second time." Judge Velasquez's tentative ruling was to deny the motion and sanction BFC for renewing a summary judgment motion without showing any new facts. (Code Civ. Proc., § 437c, subd. (f); § 1008.) However, following argument and after allowing BFC to file supplemental papers, the court changed its tentative ruling and granted BFC's motion in a February 7 minute order. Regarding Judge Moore's prior ruling, the court stated: "New issues having been added to the action by defendants by amending their answer to include new affirmative defenses regarding the affect [sic] of the provisions of Government Code sections 83116.5 and 91015 on the ability of plaintiffs to bring a private enforcement action for alleged violations of the Political Reform Act of 1974, this court invokes its inherent power to permit renewal of the previous motion for summary judgment heard by the Honorable Eileen C. Moore." After much squabbling, Judge Velasquez signed a formal order and judgment on May 27.

McCauley filed his notice of appeal from the summary judgment on June 23. On July 2, McCauley filed a challenge for cause against Judge Velasquez (McCauley's action against CTRM and its corporate treasurer, Blanche Kelly, was still pending in superior court). The challenge was based on the fact that Judge Velasquez had been employed by the Orange County District Attorney's Office and that his wife currently worked there. The gist of the challenge was that there was an appearance of impropriety because defendants, related or controlled entities, and witnesses had contributed over

---

[2]BFC petitioned this court for a writ of mandate to overturn Judge Moore's ruling; we denied the petition. (*BFC Direct Marketing* v. *Superior Court* (Aug. 23, 1990) G009960.)

$28,000 to the reelection campaign of District Attorney Michael R. Capizzi between December 1989 and October 1990.[3]

Judge Velasquez elected not to answer McCauley's challenge for cause, although counsel for BFC and CTRM urged him to do so. Judge Velasquez was therefore disqualified, and the matter was reassigned to Judge Schenk. McCauley then moved to vacate the summary judgment, claiming that Judge Velasquez's order was void in light of his disqualification. Judge Schenk denied the motion, stating he lacked jurisdiction and "it is going to be the appeal court that will decide it[,] not the trial court."

## DISCUSSION

We were strongly tempted to resolve this matter on procedural grounds. First, we question whether it was proper to allow BFC to renew its motion for summary judgment before Judge Velasquez. (See *People* v. *Grace* (1926) 77 Cal.App. 752, 759 [247 P. 585]; see also *Elsea* v. *Saberi* (1992) 4 Cal.App.4th 625, 631 [5 Cal.Rptr.2d 742].) Also, Judge Velasquez's order granting summary judgment may have been void (or at least voidable) in light of his later disqualification. (*Urias* v. *Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 426 [285 Cal.Rptr. 659].) However, we are very familiar with this case and the respective parties, and we know that a reversal on procedural grounds would only delay matters. If reverse we must, judicial economy would best be served by reversing on the merits, so that McCauley can present all his claims against all defendants in a single trial. For this reason, therefore, we will dispense with the procedural arguments and address the merits of this appeal.

The Political Reform Act (the Act) was passed by the voters as an initiative measure, Proposition 9, in the June 1974 General Election, and is

---

[3]According to a later-filed declaration, Gary Phillips (McCauley's counsel) knew of some of the information contained in the challenge prior to entry of the order granting summary judgment, but lacked corroboration and other evidence. As Phillips explained: "I determined that it was best not to present to the Court [on May 27] the information I did have as I feared that it would appear to the Court, and most certainly to defense counsel, as a desperate, but more importantly improper, attempt to influence the Court's ruling on the objections [to the order granting summary judgment]. As the Court had previously indicated to [Phillips' associate] a strong disinclination to upset the Order Granting Summary Judgment, and had declined to grant Plaintiff's February 1992 Motion . . . for Reconsideration[], I concluded that there was nothing to be gained, but plenty to be lost (namely my credibility) if I presented what I had as of May 27."

contained in section 81000 et seq. of the Government Code.[4] Among the Act's findings was that "existing laws for the disclosure of campaign receipts and expenditures have proved to be inadequate." (§ 81001, subd. (d).) Accordingly, the purpose of the Act was that "[r]eceipts and expenditures in election campaigns should be fully and truthfully disclosed in order that voters may be fully informed and improper practices may be inhibited." (§ 81002, subd. (a).) To that end, the Act requires political candidates and campaign committees to file written reports of election expenditures made and contributions received. (§§ 84200, 84211; see generally *Thirteen Committee* v. *Weinreb* (1985) 168 Cal.App.3d 528, 532 [214 Cal.Rptr. 297].)

Another finding of the Act was that prior campaign expenditure and reporting laws had "suffered from inadequate enforcement by state and local authorities." (§ 81001, subd. (h).) Thus, another of the Act's purposes was that "[a]dequate enforcement mechanisms should be provided to public officials and private citizens in order that this title will be vigorously enforced." (§ 81002, subd. (f).) The Act therefore created a private cause of action for enforcement, consistent with the finding in section 81001 that previously existing laws had not been adequately enforced. (*Thirteen Committee* v. *Weinreb, supra,* 168 Cal.App.3d at p. 538.) Further, section 81003 provides the Act "should be liberally construed to accomplish its purposes." Finally, section 81012, subdivision (a) states that the Act "may be amended to further its purposes by statute, . . ."

The Act was indeed amended by statute in 1984, adding sections 83116.5 and 91015, and the effect of these statutes is critical to this appeal. ▮▮▮ Based on the record before us, it appears that BFC was, at best, a campaign manager; seizing upon this, BFC argues that it cannot be liable in a private cause of action such as that brought by McCauley. According to BFC, section 83116.5 limits liability of a "person" who is not a candidate or a treasurer of a committee (such as a campaign manager) to an administrative sanction imposed by the Fair Political Practices Commission (FPPC).

We begin by examining section 83116.5, which is part of chapter 3 of the Act. In general, chapter 3 (§§ 83100-83123) provides for the composition and duties of the FPPC, and authorizes the FPPC to institute administrative actions for violations of the Act. Section 83116.5 states: "Any person who violates any provision of this title [i.e., the Act], who purposely or negligently causes any other person to violate any provision of this title, or who aids and abets any other person in the violation of any provision of this title,

---

[4]All statutory references are to the Government Code unless otherwise specified.

shall be liable under the provisions of this chapter [i.e., chapter 3]. Provided, however, that this section shall apply only to persons who have filing or reporting obligations under this title, or who are compensated for services involving the planning, organizing, or directing any activity regulated or required by this title, and that a violation of this section shall not constitute an additional violation under Chapter 11 [i.e, the enforcement provisions, including a private cause of action]." The corresponding provision in chapter 11 of the Act, section 91015, states: "The provisions of this chapter shall not apply to violations of Section 83116.5."

BFC's interpretation of these statutes is correct if, under the original version of the Act, entities such as itself (i.e., campaign managers) would not have been liable for reporting violations. The FPPC's legislative coordinator, Bob McWhirk, adopted this very premise in a memorandum summarizing the proposed 1984 amendments: "During the years since the enactment of the Political Reform Act, it has become increasingly evident that in certain circumstances, violations of the Act cannot fairly be attributed to those persons named in the Act, particularly true in the area of campaign reporting where the candidate and treasurer are responsible for violations of the Act, and yet, rely on *others who cannot be held liable* for their errors and ommissions [*sic*] under the Act." (Memorandum of Bob McWhirk to Greg Schmidt and Rose King, dated Feb. 27, 1984, italics added.)

The FPPC apparently based its premise upon section 84104, which is contained in chapter 4 of the Act. Chapter 4 essentially sets forth the campaign expenditure reporting requirements under the Act. Section 84104 states in pertinent part: "*It shall be the duty of each candidate, treasurer and elected officer* to maintain such detailed accounts, records, bills and receipts that are necessary to prepare campaign statements and *to comply with the provisions of this chapter.*" (Italics added.) In other words, section 84104 creates the duty to report and in the same sentence sets forth who has that duty. ▮▮▮ We therefore agree with BFC (and the FPPC) that a campaign manager was not liable under the unamended version of the Act for failing to report a campaign expenditure or contribution.[5] It therefore stands to reason that, as a general rule, "violations" of the Act by persons other than elected officials, candidates, and treasurers under the expanded liability of section 83116.5 can only be addressed in an administrative

---

[5]McCauley contends that section 91004 is broad enough to encompass campaign managers. That section provides in pertinent part: "Any person who intentionally or negligently violates *any of the reporting requirements of this act* shall be liable in a civil action . . . ." (Italics added.) This argument ignores section 84104, which imposes the statutory duty to report (i.e., the "requirements") only on elected officials, candidates, and treasurers.

action, i.e., under the provisions of chapter 4 of the Act, and not by a private cause of action.[6]

But BFC is not out of the woods yet. McCauley contends that BFC could be considered CTRM's treasurer because CTRM failed to file an organizational statement within 10 days of its qualification as a campaign committee, as required by section 84101, and thus failed to properly "designate" its treasurer under section 84102. An FPPC regulation supports McCauley's position; it provides: "If a committee fails to designate a treasurer as required by Government Code Section 84100, the person who is primarily responsible for initiating and implementing the political activity of the committee will be considered the treasurer . . . ." (Cal. Code Regs., tit. 2, § 18427, subd. (d).) It is undisputed that CTRM did not file a statement of organization until *after* McCauley filed this action; in fact, BFC stated that CTRM filed the statement "in response to this lawsuit . . . ." Thus, because CTRM did not properly designate its treasurer, there is a question of fact as to whether BFC was CTRM's "de facto treasurer."

The trial court was of the view that BFC could not be CTRM's treasurer because other individuals (Dana Reed and defendant Blanche Kelly) were designated as treasurers on CTRM's "Returns of Organization Exempt From Income Tax." However, this fact is not dispositive as to the identity of CTRM's treasurer for purposes of the Act. Early on the FPPC recognized that a "committee treasurer" could be any designated person capable of verifying and signing campaign reports, and need not be the corporate treasurer. (*John H. Augustine, Union Oil Company* (1975) 1 FPPC 69.) The Act sets forth a specific manner in which a committee must designate a treasurer. CTRM did not do this, and so therefore it does not receive the benefit of section 84104's limitation on liability.[7] It is a question of fact as to whether BFC actually served as CTRM's treasurer, and the summary judgment must be reversed.

---

[6]Our interpetation is reinforced by the fact that the original version of Senate Bill No. 1438 (the 1984 amendments) contained a proposed amendment to section 91006. The proposed amendment was a mirror image of section 83116.5 but would appear in chapter 11, the enforcement provisions. The amendment stated: "Any person who violates any provision of this title, who purposely or negligently causes any other person to violate any provision of this title, or who aids and abets any other person in the violation of any provision of this title, shall be liable under the provisions of this chapter and Chapter 3 of this title." (Sen. Bill No. 1438 (1983-1984 Reg. Sess.) § 3.) However, the Assembly deleted this proposed amendment. (Assem. Amend. to Sen. Bill No. 1438 (1983-1984 Reg. Sess.) June 18, 1984.)

[7]In a petition for rehearing, BFC points to an amended organizational statement filed by "Million" in October 1984, which Kelly signed as "CTRM Treasurer" as well as treasurer for "Million." Kelly signed in this fashion on advice of an FPPC consultant. BFC claims this established Kelly as CTRM's treasurer as a matter of law. Not so. The FPPC's advice at best established that the organizational statement filed by "Million" was proper. At no time did the

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Wallin, J., and Crosby, J., concurred.

Petitions for a rehearing were denied July 20, 1993.

---

FPPC state that CTRM was exempt from section 84101, which required CTRM to designate its treasurer within 10 days after it had qualified as a committee.