Opinion
 

 BROWN, J.
 

 The Political Reform Act of 1974 (the Act; Gov. Code, § 81000 et seq.)
 
 [1]
 
 prohibits any person from making a campaign contribution in someone else’s name. The question here is whether section 83116.5, by which the Legislature amended the Act in 1984, exempts lobbyists from criminal liability for violation of this prohibition and subjects them solely to administrative sanctions. We find such a restriction would not only conflict with manifest legislative intent but would contravene the Legislature’s statutory and constitutional authority to amend or repeal the Act as an
 
 *307
 
 initiative measure. Accordingly, we reverse the judgment of the Court of Appeal, which concluded sections 83116.5 and 91015 precluded criminal liability for violations of the Act by lobbyists.
 

 Factual and Procedural Background
 

 Only a few essential facts are relevant to the question before us: Defendant Arthur K. Snyder (defendant), a lawyer primarily engaged in lobbying, was convicted of eight misdemeanor counts of malting political contributions in a false name and one count of conspiring to make such contributions during the period from January 1989 through May 1992 on a plea of guilty,
 
 [2]
 
 and obtained a certificate of probable cause.
 
 [3]
 
 (§§ 84301, 91000, subd. (a).) The Court of Appeal reversed the judgment of conviction, concluding that section 83116.5 exempted lobbyists from criminal prosecution for violations of the Act. (See § 91015.) We granted review to determine the proper construction of the statute.
 

 Discussion
 

 In 1974, the voters approved the Act as an initiative measure concerning elections and various means for preventing corruption and undue influence in political campaigns and governmental activities. (See
 
 Fair Political Practices Com. v. Superior Court
 
 (1979) 25 Cal.3d 33, 37 [157 Cal.Rptr. 855, 599 P.2d 46].) Its provisions included a broad prohibition against what is commonly termed money laundering: “No contribution shall be made, directly or indirectly, by any person in a name other than the name by which such person is identified for legal purposes.” (§ 84301.) Violation of this proscription subjects the person to criminal penalties. (§ 91000, subd. (a).)
 

 In 1984, the Legislature added section 83116.5: “Any person who violates any provision of this title, who purposely or negligently causes any other person to violate any provision of this title, or who aids and abets any other person in the violation of any provision of this title, shall be liable under the provisions of this chapter. Provided, however, that this section shall apply only to persons who have filing or reporting obligations under this title, or who are compensated for services involving the planning, organizing, or directing of any activity regulated or required by this title, and that a violation of this section shall not constitute an additional violation under Chapter 11.” (See § 91015; Stats. 1984, ch. 670, § 2, p. 2464.)
 

 
 *308
 
 In concluding section 83116.5 exempts defendant from criminal liability for money laundering, the Court of Appeal reasoned thusly: Defendant is a lobbyist.
 
 [4]
 
 (See § 82039.) Lobbyists have reporting obligations under the Act. (§ 86100 et seq.) As originally adopted, the Act prohibited any person, including lobbyists, from making campaign contributions in a false name and made the violation a misdemeanor. Since 1984, however, section 83116.5 has provided that as to “persons who have filing or reporting obligations under this title,” they “shall be liable under the provisions of this chapter” and “violation of this section shall not constitute an additional violation under Chapter 11.” “[T]his chapter” refers to chapter 3 of the Act, which created the Fair Political Practices Commission (FPPC) and granted the FPPC authority to institute administrative action for violations of the Act. (§ 83100 et seq.; see
 
 McCauley v. BFC Direct Marketing
 
 (1993) 16 Cal.App.4th 1262, 1267 [20 Cal.Rptr.2d 498]
 
 (McCauley).)
 
 Chapter 11 sets forth the Act’s civil and criminal enforcement provisions. (§ 91000 et seq.) Section 91015, also part of the 1984 amendment, further states, “The provisions of [Chapter 11] shall not apply to violations of Section. 83116.5.” Accordingly, defendant’s status as a lobbyist removed him from the criminal purview of the Act, and he could incur only administrative sanctions for any violation.
 

 The Court of Appeal impliedly acknowledged that its construction of section 83116.5 subjected defendant—and by extension anyone else with statutory filing and reporting obligations—to weaker sanctions for money laundering than ordinary citizens, but found this anomaly compelled by the “plain language” of the statute. In its view, the electorate “correct[ed]” this disparity in 1996 by approving Proposition 208, which deleted the statutory proviso and repealed section 91015. (But see
 
 California Prolife Council v. Scully
 
 (E.D.Cal. 1998) 989 F.Supp. 1282, 1301-1302, affd. (9th Cir. 1999) 164 F.3d 1189 [enjoining enforcement of Prop. 208 provisions].)
 

 Like the Act itself, section 83116.5 is not “a prototype of sapient drafting”
 
 (Fair Political Practices Com. v. Superior Court, supra,
 
 25 Cal.3d at p. 54 (conc. and dis. opn. of Newman, J.)), and no plain meaning appears on the face of the statute. Nevertheless, neither the language of section 83116.5 nor its legislative history supports the Court of Appeal’s interpretation. Both the specific prohibition against money laundering (§ 84301) and the general
 
 *309
 
 charging statute (§ 91000, subd. (a)) are cast in the broadest terms, applying to “any person” coming within their ambit. (See
 
 post,
 
 at pp. 311-314.) Nothing in section 83116.5 reflects an object or intent to narrow the scope of this preexisting liability. Indeed, the statute expressly provides that “violation
 
 of this section
 
 shall not constitute an
 
 additional
 
 violation under Chapter 11” (italics added), which further connotes that any independent civil or criminal sanctions then available would continue unaffected by the amendment.
 

 Moreover, the purpose of the legislation was to broaden the reach of the Act. The FPPC sponsored Senate Bill No. 1438 (1983-1984 Reg. Sess.), which eventually became section 83116.5. The bill was prompted by concern that “in certain circumstances, violations of the Act cannot fairly be attributed to those persons named in the Act, particularly true [sic] in the area of campaign reporting where the candidate and treasurer are responsible for violations of the Act, and yet, rely on others who cannot be held liable for their errors and omissions under the Act.” (FPPC, Mem. to Sen. Com. on Elections & Reapportionment (Feb. 27, 1984) p. 1;
 
 id.,
 
 (May 22, 1984) p. 1.)
 
 [5]
 
 In summarizing its impact, the Senate Committee on Elections and Reapportionment reported that “[i]n practical terms, this renders campaign managers and associates liable [for violations of the Act] as well as candidates and treasurers.” (Sen. Com. on Elections & Reapportionment, Analysis of Sen. Bill No. 1438 (1983-1984 Reg. Sess.) Mar. 7, 1984, p. 1 (Senate Committee Analysis); see Assem. Com. on Elections, Reapportionment & Constitutional Amendments, Analysis of Sen. Bill No. 1438 (1983-1984 Reg. Sess.) June 19, 1984, p. 1 (Assembly Committee Analysis).)
 

 The original version allowed for civil and criminal penalties. The Legislature, however, ultimately restricted liability to administrative sanctions, apparently in response to concern that campaign volunteers and low-paid workers would incur substantial responsibility even though they were not involved in significant campaign reporting activities. (See FPPC, Mem. to Assem. Com. on Elections, Reapportionment & Constitutional Amendments (June 11, 1984).) As the Assembly Committee on Elections, Reapportionment, and Constitutional Amendments explained in its analysis, the bill “extends . . . liability [then imposed only on candidates and treasurers] to other persons who are, in effect, in decision making capacities on a campaign, but does not apply to rank and file campaign volunteers.” (Assem. Com. Analysis,
 
 supra,
 
 at p. 2.)
 

 
 *310
 
 It thus appears evident the Legislature sought to expand the class of persons the FPPC could hold accountable for reporting violations under the Act, not limit liability for money laundering by lobbyists and others with filing and reporting obligations. In its amicus curiae brief, the FPPC supports this view, which “because of the agency’s expertise ... is entitled to great weight unless clearly erroneous or unauthorized.”
 
 (Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.
 
 (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].)
 

 This expansion of coverage operates in two ways: First, it imposes administrative liability on persons not previously subject to regulation or penalties under the Act, i.e., those persons, such as campaign managers, “who are compensated for services involving the planning, organizing, or directing of any activity regulated or required by this title . . . .” (§ 83116.5; see
 
 McCauley, supra,
 
 16 Cal.App.4th at pp. 1267-1268.) Although neither civil nor criminal, sanctions apply, such persons come within the administrative control of the FPPC.
 

 Second, section 83116.5 sanctions conduct not previously subject to regulation or penalties under the Act, i.e., the statute imposes administrative liability on any person “who purposely or negligently causes any other person to violate any provision of this title, or who aids and abets any other person in violation of any provision of this title . . . .” Those already having direct reporting obligations are now also subject to administrative liability if they indirectly cause others to engage in prohibited activity. This interpretation accords with the Legislature’s understanding of both the FPPC’s concern in sponsoring Senate Bill No. 1438 and the impact the legislation was intended to have. (See Sen. Com. Analysis,
 
 supra,
 
 at p. 1; Assem. Com. Analysis,
 
 supra,
 
 at p. 1; Sen. Republican Caucus, Dig. of Sen. Bill No. 1438 (1983-1984 Reg. Sess.) as amended Mar. 14, 1984; Sen. Democratic Caucus, Dig. of Bill No. 1438 (1983-1984 Reg. Sess.) as amended Mar. 14, 1984.)
 

 In sum, we construe the proviso in section 83116.5 to mean that administrative sanctions, but not “additional” civil or criminal liability, may be imposed upon persons with reporting obligations who engage in newly prohibited conduct—aiding and abetting or negligently causing violation—as well as upon persons newly regulated by the Act—those such as campaign managers otherwise compensated for services involving filing and reporting activities. We find no basis for concluding that in so amending the Act the Legislature intended to affect liability outside these circumstances. The Court of Appeal’s interpretation of section 83116.5 fails to accord with this intent and undermines the rigorous civil and criminal enforcement previously approved by the voters.
 

 
 *311
 
 Nor could the Legislature have eliminated criminal liability for violation of section 84301 without contravening constitutional and statutory constraints on amendment or repeal of the Act.
 
 [6]
 
 Article II, section 10, subdivision (c) of the California Constitution provides in part that “[the] Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval.” The Act authorizes amendment by statute “to further its purposes” (§ 81012, subd. (a)); if not, it “may be amended or repealed by a statute that becomes effective only when approved by the electors”
 
 (id.,
 
 subd. (b)). Eliminating criminal liability for money laundering by lobbyists would not further the purpose of the Act and would effectively repeal such sanctions. Either of these circumstances places the Court of Appeal’s interpretation beyond legislative prerogative. “We presume the Legislature did not intend to enact a statute of doubtful validity.”
 
 (People v. Simon
 
 (1995) 9 Cal.4th 493, 522 [37 Cal.Rptr.2d 278, 886 P.2d 1271].)
 

 Defendant argues in favor of the Court of Appeal judgment but embraces an alternate, somewhat bolder, analysis. According to his interpretation, the Act originally prescribed sanctions for violation of section 84301 against only candidates and treasurers, not lobbyists. With respect to lobbyists, section 83116.5 subsequently imposed administrative liability; only by the passage of Proposition 208 did they incur civil and criminal liability.
 

 The plain language of the Act categorically contradicts this interpretation. Since its inception, section 84301 has prohibited “any person” from directly or indirectly making a political contribution “in a name other than the name by which such person is identified for legal purposes.” Section 82047 defines “person” for purposes of the Act as “an individual, proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, limited liability company, association, committee, and any other organization or group of persons acting in concert.” (As amended by Stats. 1994, ch. 1010, § 144.) Section 91000, subdivision (a), provides that “[a]ny person who knowingly or willfully violates any provision of this title is guilty of a misdemeanor.” Beyond cavil, lobbyists have always come within the scope of these provisions.
 

 In support of his contention that the unqualified reference to “any person” in sections 84301 and 91000 extended only to candidates and treasurers,
 
 *312
 
 defendant cites certain statements by Senator William A. Craven, who introduced Senate Bill No. 1438.
 
 [7]
 
 In his introductory remarks, Senator Craven stated in part, “Currently, only candidates and campaign treasurers can be held accountable for campaign disclosure violations—and errors and omissions are often the result of action taken by campaign managers or consultants, many highly paid, who cannot be held liable under current law.”
 

 Assuming we may consider the statements of individual legislators in this regard (cf.
 
 C-Y Development Co. v. City of Redlands
 
 (1982) 137 Cal.App.3d 926, 932 [187 Cal.Rptr. 370]; see also
 
 ante,
 
 fn. 7), we fail to discern any support for defendant’s position in these observations. Money laundering does not violate campaign disclosure obligations but rather campaign contribution restrictions. A candidate could fully comply with his or her reporting mandates while a contributor would remain liable for making the contribution “in a name other than the name by which such person is identified for legal purposes” in violation of section 84301. In approving the Act, the electorate plainly understood lobbyists were among, if not chief among, campaign contributors and included provisions specifically directed to their activities. (See § 81002, subd. (b); Ballot Pamp., Primary Elec. (June 4, 1974), argument in favor of Prop. 9, p. 36 [initiative measure adding Act]; Ballot Pamp., Primary Elec.,
 
 supra,
 
 Legis. Counsel, analysis of Prop. 9, p. 34; see also former §§ 86200, 86202.)
 
 [8]
 
 In particular, former section 86202 made it “unlawful for a lobbyist to make a contribution, or to act as an agent or intermediary in the making of any contribution, or to arrange for the making of any contribution by himself or by any other person.” (Stats. 1974, p. A-182; see also
 
 ante,
 
 fn. 8.) The statutory prohibition against money laundering would afford one obvious mechanism for enforcing this provision.
 

 Defendant also extrapolates a limitation on the scope of section 84301 liability as to lobbyists from section 84104, which states, “It shall be the
 
 *313
 
 duty of each candidate, treasurer and elected officer to maintain such detailed accounts, records, bills and receipts that are necessary to prepare campaign statements and to comply with the provisions of this chapter.” Again, he confuses the more narrow reporting obligations imposed on a select class of individuals, a class that section 83116.5 expanded, with the general prohibition against certain forms of campaign contributions contained in section 84301, which applies broadly and categorically to “any person.” Furthermore, section 84104 was enacted several years after the electorate approved the Act. (See Stats. 1979, ch. 779, § 6, p. 2663.) It required that certain accounts, bills, records, and receipts formerly kept by candidates, treasurers, and elected officers to expedite performance of campaign disclosure obligations now “be maintained to prepare campaign statements and to comply with the provisions relating to campaign disclosure.” (Legis. Counsel's Dig., Sen. Bill No. 998, 4 Stats. 1979 (1979-1980 Reg. Sess.) Summary Dig., p. 227.)
 
 [9]
 
 It thus has no bearing on our construction of section 84301, which was part of the original Act and concerned campaign contributions.
 

 Moreover, defendant’s construction of the statutory scheme disregards the overarching directive that the Act “should be liberally construed to accomplish its purposes.” (§ 81003.) Among the enumerated purposes, “[t]he activities of lobbyists should be regulated and their finances disclosed in order that improper influences will not be directed at public officials” (§ 81002, subd. (b)), and “[a]dequate enforcement mechanisms should be provided to public officials and private citizens in order that this title will be vigorously enforced”
 
 (id.,
 
 subd. (f)). Defendant’s crabbed interpretation of “any person” in section 84301 fails to effectuate these directives and finds no support in the Act. (Cf.
 
 Calatayud v. State of California
 
 (1998) 18 Cal.4th 1057, 1065-1068 [77 Cal.Rptr.2d 202, 959 P.2d 360] [legislative history of statute creating exceptions to firefighter’s rule established that reference to “any person” should not be read literally].)
 

 Finally, defendant relies on language in
 
 McCauley, supra,
 
 16 Cal.App.4th 1262. In
 
 McCauley,
 
 the plaintiff brought a private enforcement action (see § 81002, subd. (f)) alleging that a political action committee failed to report a contribution in support of a tax initiative. (See §§ 84101, 84200.) The defendant claimed it had no duty to do so because it had acted in the capacity of a campaign manager and section 84101 on its face imposed reporting responsibilities only upon candidates, treasurers, and elected
 
 *314
 
 officials. Although section 83116.5 may have expanded these obligations to campaign managers, they could incur only administrative sanctions for any violation. The Court of Appeal agreed to the extent the record established the defendant in fact had acted in the capacity of a campaign manager. (McCauley,
 
 supra,
 
 16 Cal.App.4th at p. 1267.) “[A]s a general rule, ‘violations’ of the Act by persons other than elected officials, candidates, and treasurers under the expanded liability of section 83116.5 can only be addressed in an administrative action, i.e., under the provisions of chapter 4 of the Act, and not by a private cause of action.”
 
 (Id.
 
 at pp. 1268-1269, fn. omitted; see § 91015.) The court nevertheless reversed the grant of summary judgment because the record disclosed a factual dispute as to whether the defendant had acted as a campaign treasurer and therefore was subject to civil liability for reporting violations under provisions of the Act predating the 1984 amendment.
 
 (McCauley, supra,
 
 16 Cal.App.4th at p. 1269.)
 

 Plainly,
 
 McCauley
 
 affords defendant no assistance. There, the court was considering a violation of the reporting obligations under section 84101 et seq. If, because the defendant functioned as a campaign manager, those obligations did not arise prior to the enactment of section 83116.5, then only administrative sanctions applied. Here, the violation is money laundering under section 84301, a prohibition that at all times imposed criminal liability against “any person,” including defendant. The
 
 McCauley
 
 court specifically held that section 83116.5 did not alter such preexisting liability.
 
 (McCauley, supra,
 
 16 Cal.App.4th at pp. 1268-1269.)
 

 Defendant also invokes the rule of lenity: “When language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute.”
 
 (People v. Overstreet
 
 (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) In this case, the rule offers defendant no solace: Under the circumstances, we entertain no doubt that the reference to “any person” in section 84301 should be construed according to its plain and obvious meaning and that nothing in the language or intent of section 83116.5 did or could qualify that meaning. Only by after-the-fact casuistry can defendant claim ignorance of his criminal liability for violation of the Act’s proscription against making campaign contributions in a false name.
 

 
 *315
 
 Disposition
 

 The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.
 

 George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.
 

 [1]
 

 All unspecified statutory references are to the Government Code.
 

 [2]
 

 Arthur K. Snyder Law Corporation and its successor corporation also were convicted of one count of conspiring to make political contributions in a false name. (See Pen. Code, § 182.) They did not separately appeal or petition for review. All references to defendant include these entities.
 

 [3]
 

 Our review does not extend to any issue relating to defendant’s guilty plea or certificate of probable cause.
 

 [4]
 

 In their petition for rehearing in the Court of Appeal, the People for the first time disputed defendant’s status as a lobbyist. They now request this court take judicial notice of a certification by the Secretary of State that his “record reflects no lobbying registration or lobbying disclosure materials for Arthur K. Snyder for the period covering January 1, 1989 through December 31, 1992.” In light of our construction of section 83116.5, defendant’s status is immaterial to his criminal liability for violation of section 84301, and we deny the request. (See
 
 post,
 
 at pp. 311-315.)
 

 [5]
 

 We take judicial notice of the ballot arguments to Proposition 9 and the legislative history material of section 83116.5, documents we typically consult as interpretive aids in these circumstances. (See, e.g.,
 
 Amador Valley Joint Union High Sch. Dist.
 
 v.
 
 State Bd. of Equalization
 
 (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281].)
 

 [6]
 

 In his answer to the amicus curiae briefs of the California District Attorneys Association and the FPPC, defendant suggests this issue is not properly before the court, having not been raised by the People in the Court of Appeal. (See Cal. Rules of Court, rule 29(b)(1).) To the extent we must consider the question to determine whether the Court of Appeal properly construed section 83116.5, we deem it “fairly included” in the issue on which we granted review. (Cal. Rules of Court, rule 29.2(b).)
 

 [7]
 

 The record does not contain the document in which Senator Craven’s statement appears or a letter from him addressed to a Senate committee on which defendant also relies. We deny defendant’s request to augment or correct the record by including these materials (Cal. Rules of Court, rule 12(a)) and find no basis for taking judicial notice (see Evid. Code, § 452). As discussed in the text, however, even considering the cited documents, we reach the same conclusion as to the proper construction of section 83116.5.
 

 [8]
 

 Former section 86200 defined “contribution” as that term applied to restrictions on contributions by lobbyists; former section 86202 prohibited lobbyists from making campaign contributions. (Added by Prop. 9; Stats. 1974, p. A-182.) In
 
 Fair Political Practices Com.
 
 v.
 
 Superior Court, supra,
 
 25 Cal.3d at page 49, this court held former section 86202 unconstitutional as “a substantial limitation on associational freedoms guaranteed by the First Amendment . . . .” The Legislature repealed both sections in 1984. (Stats. 1984, ch. 161, §§ 5, 6, p. 534.) Neither action alters the fact the electorate contemplate that lobbyists came within the purview of the Act both generally and specifically.
 

 [9]
 

 We grant the FPPC’s request to take judicial notice of this legislative history material. (Evid. Code, § 452, subd. (c).)