163 Cal.App.4th 247 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
MARCOS SORIA, Defendant and Appellant.
No. H031237.
Court of Appeals of California, Sixth District.
May 23, 2008.
*249 Jeffrey A. Glick, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RUSHING, P. J.

STATEMENT OF THE CASE
Defendant Marcos Soria pleaded guilty to numerous charges that were alleged in three separately filed complaints, and in exchange, the court imposed a specified sentence of 35 years eight months. The court also imposed three separate restitution fines in each case totaling $10,600 and matching parole revocation fines, the latter of which were suspended. (Pen. Code, §§ 1202.4, subd. (b), 1202.45.)[1]
On appeal from the judgment, defendant claims the imposition of separate fines in each case totaling more than $10,000 was unauthorized. We agree and strike the fines imposed in two of the three cases, leaving a single restitution fine of $10,000 and a suspended matching parole revocation fine of $10,000.

*250 BACKGROUND[2]
On September 30, 2005, the Santa Clara County District Attorney (District Attorney) filed a complaint in case No. CC506587 charging defendant with two counts of vehicle theft, reckless driving, hit-and-run driving, driving without a license, and resisting arrest. On October 11, 2005, the District Attorney filed a second complaint in case No. CC507417 charging defendant and codefendant Bengie Carinio with attempted premeditated murder, two counts of assault with a firearm, and shooting at an occupied vehicle plus various enhancements. On October 18, 2005, the District Attorney filed a third complaint in case No. CC508203 charging defendant with vehicle theft.
On December 27, 2005, defendant pleaded not guilty to all of the charges. Thereafter, he negotiated a package plea bargain that resolved all of the charges in the three cases. On March 16, 2006, defendant changed his pleas to guilty.[3]
At the hearing, the prosecutor explained the plea bargain. He said that in exchange for defendant's pleas, the allegation that the attempted murder was premeditated would be dismissed, and defendant would receive a specified sentence of 35 years eight months. Defense counsel agreed with the disposition, and defendant said that he understood it. The court then explained defendant's constitutional rights, and defendant waived them. Defendant indicated that no other promises had been made and that his plea was free and voluntary. The court noted that defendant's maximum exposure was 41 years four months, but it would impose the specified sentence. Next, the court explained various consequences of pleading guilty, including that defendant would be "subject [to] a restitution fund fine of not less than $200 nor more than $10,000 as to each case." Defendant said he understood and then entered his pleas.
Thereafter, the prosecutor said, "[A]t this time I would ask for [defendant] to waive his appellate rights, be informed that he has the right to appeal, waive those appellate rights and any issues pursuant to Penal Code [section] 654." The court asked and defendant said he understood that he had the right to appeal. The court then asked, "Do you give up your right to an appeal and accept sentence summarily without exercising your right to appeal?" Defendant said "[y]es."
*251 The single probation report prepared for the case broke down the specified sentence into the component terms for each offense and enhancement. It also recommended separate restitution and matching parole revocation fines in each case$10,000 fines in case No. CC507417; $200 fines in case No. CC508203; and $400 fines in case No. CC506587.
At sentencing on August 25, 2006, the court imposed the specified sentence, announced the custody credits to which defendant was entitled, and imposed separate restitution and matching parole revocation fines in each case.

DISCUSSION
Defendant claims the imposition of restitution and matching parole revocation fines each totaling more than $10,000 was unauthorized.
In addition to opposing defendant's claim, the Attorney General argues that the claim is barred because defendant waived his right to appeal. Alternatively, the Attorney General argues that the plea bargain precludes defendant's challenge to the restitution fines.

Waiver of Appellate Rights
"Because waivers of appellate rights are ordinarily found in the context of a plea bargain, the scope of the waiver is approached like a question of contract interpretationto what did the parties expressly or by reasonable implication agree?" (In re Uriah R. (1999) 70 Cal.App.4th 1152, 1157 [83 Cal.Rptr.2d 314].) Thus, where "the defendant agrees to a bargain which includes a specific or indicated sentence, and if that is the sentence actually imposed, the defendant's waiver will foreclose appellate review of the sentence; any challenge to the sentence will be deemed a challenge to an integral component of the bargain. [Citations.] The waiver will not cover claims that the trial court imposed a sentence in excess of its fundamental jurisdiction or the terms of the bargain, but the waiver will not allow review of alleged error in the computation or imposition of the sentence, including application of section 654. [Citation.]" (Id. at pp. 1157-1158.) Nevertheless, the right of appeal should not be considered waived or abandoned except where the record clearly establishes it. (People v. Vargas (1993) 13 Cal.App.4th 1653, 1662 [17 Cal.Rptr.2d 445].)
*252 Here, after defendant pleaded guilty, the prosecutor asked the court to obtain a general waiver of "appellate rights and issues concerning Penal Code [section] 654." The court asked defendant if he understood that he had the right to appeal and then asked if he gave up that right and would "accept sentence summarily without exercising your right to appeal?" (Italics added.) Defendant said he would.
Clearly, defendant's waiver expressly encompassed any claims concerning his specified sentence, including how it was computed and whether separate terms for his offense might be prohibited under section 654. However, the record does not establish that defendant agreed to waive claims concerning restitution fines, and in particular, his claim that the imposition of fines exceeding $10,000 was unauthorized. We note that the prosecutor did not mention restitution fines when he recited the terms of the bargain or later when he solicited a general waiver of appellate rights. Although the court explained restitution fines before defendant entered his plea, that advisement did not obviously imply that defendant would not be able to challenge restitution on appeal. And later, in explaining defendant's right of appeal and obtaining his waiver, the court did not mention restitution. Rather, it expressly referred only to the sentence.
We further note that "[a] broad or general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error." (People v. Mumm (2002) 98 Cal.App.4th 812, 815 [120 Cal.Rptr.2d 18], italics added.) "Thus, a waiver of appeal rights does not apply to `"possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.'" (Ibid.) Accordingly, a "general waiver of the right to appeal, given as part of a negotiated plea agreement, will not be construed to bar the appeal of sentencing errors occurring subsequent to the plea . . . ." (People v. Panizzon (1996) 13 Cal.4th 68, 85 [51 Cal.Rptr.2d 851, 913 P.2d 1061], fn. omitted.)
Here, the alleged error was not the advisement concerning restitution fines, which was given before defendant's waiver; rather, the alleged error was the imposition of fines, which occurred after defendant's plea and waiver.
Given the ambiguity concerning the intended scope of defendant's waiver and the timing of the alleged error, we do not find that defendant waived his right to challenge the validity of the restitution and parole revocation fines.[4]

*253 The Plea Bargain

Although one need not object to an unauthorized sentence to challenge it on appeal, it is settled that when a defendant has pleaded guilty in return for a specified sentence, he or she may not challenge that sentence on appeal, even if it might otherwise be statutorily unauthorized, as long as the trial court had fundamental jurisdiction. (People v. Hester (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569]; e.g., People v. Couch (1996) 48 Cal.App.4th 1053, 1056-1057 [56 Cal.Rptr.2d 220] [acceptance of specified sentence barred appellate claim of error in imposing it]; People v. Nguyen (1993) 13 Cal.App.4th 114, 122-123 [16 Cal.Rptr.2d 490] [same].) "The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (People v. Hester, supra, 22 Cal.4th at p. 295.)
The Attorney General argues that even if the fines here were unauthorized, defendant may not challenge them because the plea bargain "expressly encompassed three cases, that had not been consolidated," and "[t]he parties contemplated separate fines in each case." Thus, "the trial court had fundamental jurisdiction to sentence in accord with the terms of the plea bargain under which [defendant] accepted liability to fines in each case up to the statutory maximum." We disagree.
As our factual summary reveals, the prosecutor outlined the plea bargain and identified only three terms: (1) the allegation of premeditation would be dismissed; (2) defendant would plead guilty to all of the remaining allegations; and (3) he would receive a specified sentence of 35 years eight months. The prosecutor did not mention restitution fines; and his outline of the bargain did not reasonably suggest that it included the imposition of restitution fines in excess of $10,000. Likewise, after the prosecutor outlined the bargain, defense counsel did not add that the bargain covered restitution fines; nor did defense counsel suggest that the bargain either precluded the imposition of any fines or limited restitution fines to $10,000. Thus, the record at most indicates that the plea bargain dealt only with the resolution of the charges and the imposition of a specified sentence and that the parties left the issue of restitution fines to the trial court's discretion, which it would exercise in accordance with applicable law. (E.g., People v. Dickerson (2004) 122 Cal.App.4th 1374, 1386 [19 Cal.Rptr.3d 545].)
*254 Insofar as the Attorney General implies that the court's advisementi.e., that defendant was subject to fines up to $10,000 in each caserepresented a term of the bargain, we also disagree. The court did not purport to recite a term of the plea bargain but simply advised defendant about the consequences of pleading guilty and explained the scope of its discretion to impose restitution fines. Although defendant said he understood the court's advisement, doing so does not establish that the advisement reflected a term of the bargain or that defendant thought it did. Defendant merely acknowledged the court's view of its discretion concerning the imposition of restitution.
Under the circumstances, we do not find that the bargain encompassed any agreement concerning the imposition of separate fines in each case or fines totaling more than $10,000. Thus, just as defendant may not now claim that the imposition of multiple fines totaling more than $10,000 violated the plea bargain, the Attorney General may not claim that imposition of such fines was a term of the bargain.

Propriety of Separate Fines Exceeding $10,000
To help resolve defendant's claim that the restitution fines were unauthorized, we first review some relevant cases.
In People v. McNeely (1994) 28 Cal.App.4th 739 [33 Cal.Rptr.2d 582] (McNeely), the court addressed a claim similar to defendant's claim here. There, at separate hearings, the defendant pleaded guilty to eight burglaries charged in one information and two burglaries charged in another. At the next hearing, the court imposed sentence on all charges and also ordered the defendant to pay $93,000 in restitution to the various victims under Government Code former section 13967, subdivision (c), which applied at that time.[5] On appeal, the defendant claimed that restitution was limited to $10,000. (28 Cal.App.4th at pp. 742-744.) The reviewing court agreed. It explained that the statute "did not give the court authority to order restitution up to $10,000 for each victim or on each count. Nor did it allow a restitution order exceeding $10,000 where, as here, a defendant is sentenced in one hearing on two or more cases." (Id. at p. 743, italics added.) Noting cases limiting restitution fines to the $10,000 limit regardless of the number of victims or counts, the court observed that "[w]hile a trial court can separately sentence a *255 defendant on different cases at a single hearing [citation], here the court combined the charges in both cases in imposing the prison term and ordering restitution. We do not believe this creates separate sentencing proceedings on the two cases. When a penal statute is ambiguous, it must be construed in the light most favorable to the defendant. [Citation.] When section 13967 is construed in this light, a restitution order on a crime committed in 1989 is limited to $10,000." (Id. at pp. 743-744.)[6]
In People v. Ferris (2000) 82 Cal.App.4th 1272 [99 Cal.Rptr.2d 180] (Ferris), the court addressed a similar claim concerning restitution fines under sections 1202.4 and 1202.45. As in McNeely, the defendant was charged in two cases with crimes committed on different occasions. After the defendant pleaded not guilty, the prosecutor moved to join the cases for trial under section 954. The court granted the motion but did not formally consolidate the two cases under a single information and case number. Thereafter, the jury returned separate verdicts of guilt in each case, and separate probation reports were prepared. At sentencing, the court imposed $10,000 restitution and matching parole revocation fines in each case. On appeal, the defendant claimed that the imposition of separate fines totaling more than $10,000 was unauthorized because the two cases had been consolidated, and sections 1202.4 and 1202.45 limited fines to $10,000 "[i]n every case" where a person is convicted of a felony and the sentence includes a period of parole. (82 Cal.App.4th at pp. 1274-1276; see fn. 1, ante.) To resolve the defendant's claim, the court construed the meaning of the phrase "in every case."[7]
*256 Observing that "joinder" and "consolidation" are terms often used interchangeably, the court first opined that under the facts of the case, any linguistic distinction was irrelevant because clearly, the defendant was "substantively tried and sentenced in one joint case." (Ferris, supra, 82 Cal.App.4th at p. 1277.) Finding the case similar to McNeely, the court noted that sections 1202.4 and 1202.45 "do not specify whether the phrase `every case' means every separately charged and numbered case or every jointly tried case." (Ferris, supra, 82 Cal.App.4th at p. 1277.) Given this ambiguity, the court adopted the construction more favorable to the defendant and concluded that the phrase in "`every case'" "includes a jointly tried case although it involves charges in separately filed informations." (Ibid.) The court noted that the charges had been joined for trial, which "effectively" joined the two cases despite the fact that they retained separate case numbers. Accordingly, the court held that it was error to impose restitution fines exceeding the statutory maximum of $10,000. (Ibid.) The court further observed that allowing separate restitution fines in a case involving separate informations but joint trials and sentencing could lead prosecutors to seek numerous fines by filing multiple informations that allege a single offense. The court declined to condone such an exercise of form over substance. (Id. at p. 1278 & fn. 10.)
In People v. Enos (2005) 128 Cal.App.4th 1046 [27 Cal.Rptr.3d 610] (Enos), at a single hearing, the defendant entered into a negotiated disposition and pleaded guilty to charges alleged in three separate cases. The trial court imposed separate restitution and parole revocation fines in each case, totaling $1,800. Citing Ferris, the defendant claimed that the imposition of three separate restitution fines was unauthorized because the three separate cases were resolved in a comprehensive plea agreement at a single sentencing hearing. The court disagreed, finding Ferris inapplicable for two reasons. (Id. at pp. 1048-1049.)
"First, the facts are different. Here, there was never a motion to join or consolidate the three cases, and, even though there was a combined sentencing hearing, the cases were not tried together, as they were in Ferris. Here, *257 throughout the proceedings, the trial court and the parties treated the cases as separate. In addition, three separate appellate records were prepared, each corresponding to its own number. Separate minute orders and separate notices of appeal were filed in each case." (Enos, supra, 128 Cal.App.4th at p. 1049.)
"Second, we think the Ferris court's primary concern was not with the trial court's imposition of more than one section 1202.4, subdivision (b) restitution fine and more than one suspended section 1202.45 parole revocation fine but rather with the resulting total of the fines that exceeded the $10,000 statutory limit. [Citation.] The court cited its earlier decision in [McNeely] where it held that a restitution order cannot exceed $10,000 if the defendant is sentenced in multiple cases at a single hearing. [Citation.] Thus, in our view Ferris stands for the proposition that a trial court cannot impose multiple section 1202.4, subdivision (b) restitution fines and multiple section 1202.45 parole revocation fines in nonconsolidated cases where the total fines exceed the statutory maximum; the opinion does not address the question whether separate fines are proper where the total does not exceed the statutory maximum. [Citation.]" (Enos, supra, 128 Cal.App.4th at p. 1049.)
Last, the court opined that nothing in the statutes prohibits multiple fines "in consolidated cases disposed of at a single sentencing hearing. To read these statutes as precluding separate fines that do not exceed the statutory maximum would result in a rule of law with no practical effect, because a defendant could never show prejudice. A trial court sentencing a defendant in consolidated cases would simply calculate the amount of the restitution fines as a whole instead of breaking them down separately for each case. This is in essence exactly what the trial court did here; it expressed an intention to impose a total fine of $1,000, and then allocated that fine among the three cases so that the statutory minimum fine was imposed in each. Because the total fine would be the same, whether imposed in the aggregate or portioned and separately imposed in each case, there cannot be any prejudice to appellant." (Enos, supra, 128 Cal.App.4th at pp. 1049-1050, fn. omitted, first italics added.)
In People v. Schoeb (2005) 132 Cal.App.4th 861 [33 Cal.Rptr.3d 889] (Schoeb), the defendant entered a negotiated settlement to five separate cases, pleading guilty to nine charges in exchange for dismissal of the others. At a single sentencing hearing, the court imposed five separate restitution fines, totaling $2,600. (Id. at p. 863.) On appeal, the court upheld the separate *258 fines. It distinguished Ferris, noting that the defendant's cases were never consolidated for trial and that there were separate abstracts and minute orders in each case. Moreover, applying Enos, the court found no error because the total amount of the restitution fines did not exceed $10,000. (Id. at p. 865.)
Defendant acknowledges that this case, like Enos and Schoeb, is distinguishable from Ferris because his three cases were not jointly tried. However, according to defendant, this distinction does not necessarily mean that his fines were authorized. He argues that just as in Ferris, the phrase "in every case" was ambiguous concerning whether it referred individually to each separately charged and numbered case or collectively to separate cases that are jointly tried, here also, the phrase is ambiguous concerning whether it refers only to individual cases (and jointly tried cases) or to cases jointly resolved without a trial in a single proceeding under a comprehensive plea bargain.
According to defendant, there is no substantive legal reason to distinguish multiple cases jointly resolved in one trial from multiple cases jointly resolved at the same time under a comprehensive plea bargain. Nor, defendant argues, is there a valid policy reason to bar fines in excess of $10,000 when multiple cases are jointly tried but permit such fines when multiple cases are jointly resolved under a single plea bargain. "That is, there is no basis for subjecting a defendant who elects to admit charges at an early stage, thereby minimizing the use of judicial resources, to greater punishment than one who contests the charges through trial."
We agree that the phrase "in every case" is no less ambiguous here than it was under the circumstances in Ferris. Moreover, we also agree with defendant's analysis.
In Ferris, the court's interpretation of the phrase "in every case" was not controlled by the fact that the cases were not formally consolidated, they retained separate numbers, and various administrative procedural details reflected the separate status of the casese.g., separate jury verdicts and probation reports in each case. Rather, focusing on substance rather than form, the court viewed the phrase in a practical rather than technical way and considered it reasonably susceptible of an interpretation based on how the numerous charges in multiple cases were resolved. Implicitly, the court reasoned that a single trial on all the charges would be the same regardless of whether the charges were alleged in one case or multiple cases. In effect, *259 therefore, the unified resolution of the charges consolidated the three technically separate cases into one for the purpose of restitution fines under sections 1202.4 and 1202.45.
We observe that the Ferris court did not expressly discuss the goal of restitution fines and parole revocation fines, which is "the recoupment from prisoners and potentially from parolees who violate the conditions of their parole some of the costs of providing restitution to crime victims." (People v. Oganesyan (1999) 70 Cal.App.4th 1178, 1184 [83 Cal.Rptr.2d 157].) However, we note that although the court's interpretation does not maximize the amount of money that could be collected from convicted felons for purposes of restitution, its interpretation is not inconsistent with the statutory purpose and does not frustrate or defeat it. (See Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218] [statutes are interpreted to comport with legislative intent and promote rather than defeat their general purpose].) Nor do we find it unreasonable as a matter of law.
Here, we do not consider the fact that defendant's three cases were not formally consolidated under a single information or jointly tried controlling on the meaning of the phrase "in every case." Moreover, the resolution of multiple cases under the package plea bargain at a single hearing is functionally identical to the resolution of multiple cases in a joint trial, and in each instance the resolution would have been the same regardless of whether the charges had been alleged in one case or multiple cases. Thus, we find no material basis to distinguish this case from Ferris. Moreover, we cannot conceive a policy reason why a defendant who forgoes trial and resolves multiple cases under a single plea should be subject to restitution fines exceeding $10,000 when a defendant whose multiple cases are joined for trial is not. In our view, the unified resolution of all charges under a package plea bargain at a single hearing effectively consolidated defendant's three cases into one case for purposes of restitution fines just as a joint trial does.
Furthermore, notwithstanding separate case numbers and minute orders, the procedural indicia of effective consolidation are far more extensive here than they were in Ferris, Enos or Schoeb. Defendant initially entered his pleas to the charges in each case at the same hearing. He then negotiated a single, package plea bargain that resolved all of the charges in each case and resulted in a specified sentence of 35 years eight months. At the same hearing, he collectively waived his constitutional and appellate rights and pleaded guilty to the charges in all of the cases. The probation department prepared a single probation report. The court held a single sentencing hearing and filed only one abstract of judgment. Defendant filed a single notice of appeal, and only one appellate record was prepared.
*260 Under the circumstances, we hold that the phrase "in every case" may reasonably be construed to include multiple cases that are fully and completely resolved at the same time under a package plea bargain.
As noted, in construing ambiguous statutes, the courts in McNeely and Ferris adopted the construction more favorable to the defendant. Here, even if we assume that the phrase "in every case" reasonably may be interpreted to limit restitution fines to $10,000 only where there is one accusatory pleading and case number or where multiple cases are jointly tried, we shall adopt the interpretation more favorable to defendant. Thus, we hold that sections 1202.4 and 1202.45 limit fines to $10,000 not only where there is one case number or where multiple cases jointly tried but also where the charges in multiple cases are fully and completely resolved at the same time under a comprehensive, package plea bargain.
Finally, we note that in Enos, the court read Ferris to mean that "a trial court cannot impose multiple section 1202.4, subdivision (b) restitution fines and multiple section 1202.45 parole revocation fines in nonconsolidated cases where the total fines exceed the statutory maximum . . . ." (Enos, supra, 128 Cal.App.4th at p. 1049, italics added.) Thus, even under the Enos court's view of Ferris, the imposition here of three fines totaling $10,600 would be unauthorized.
In sum, we conclude that at sentencing, sections 1202.4 and 1202.45 permitted the imposition of restitution and parole revocation fines up to $10,000. Thus, the imposition of restitution and parole revocation fines each totaling $10,600 was unauthorized.[8]

DISPOSITION
The judgment is modified to strike the $400 restitution fine and matching parole revocation fine in case No. CC506587 and the $200 restitution fine and matching parole revocation fine in case No. CC508203. As modified, the *261 judgment is affirmed. The clerk of the superior court is directed to correct the joint abstract of judgment to show only one restitution fine of $10,000 and one suspended parole revocation fine of $10,000.
Premo, J., and Elia, J., concurred.
NOTES
[1] Penal Code section 1202.4, subdivision (a)(3)(A) provides that, in addition to any other penalty provided or imposed under law, the court shall order a person convicted of a crime to pay a restitution fine in accordance with Penal Code section 1202.4, subdivision (b).

Penal Code section 1202.4, subdivision (b) provides, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." (Italics added.)
All unspecified statutory references are to the Penal Code.
[2] Given the sentencing issue raised on appeal, we need not summarize the facts underlying defendant's offenses.
[3] At the same hearing, codefendant Bengie Carinio also pleaded guilty in case No. CC507417.
[4] Although defendant did not object to the imposition of the fines in excess of $10,000, he did not forfeit his right to challenge them as unauthorized. (People v. Smith (2001) 24 Cal.4th 849, 851-852 [102 Cal.Rptr.2d 731, 14 P.3d 942] [challenge to restitution fines as unauthorized not forfeited by failure to object]; e.g., People v. Andrade (2002) 100 Cal.App.4th 351, 354 [121 Cal.Rptr.2d 923] [failure to object to imposition of allegedly unauthorized parole revocation restitution fine did not forfeit challenge on appeal]; People v. Blackburn (1999) 72 Cal.App.4th 1520, 1534 [86 Cal.Rptr.2d 134] [imposition of restitution fines of more than $10,000 was an amount that could not lawfully be imposed and therefore challenge not waived by failure to object]; People v. Chambers (1998) 65 Cal.App.4th 819, 821-823 [76 Cal.Rptr.2d 732] [failure to object to the imposition of a second restitution fine does not forfeit appellate review].)
[5] The applicable version of Government Code former section 13967, subdivision (c) provided, in pertinent part, "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, but not to exceed ten thousand dollars ($10,000)." (Stats. 1988, ch. 975, § 1, pp. 3151-3152, italics added.)
[6] It has long been judicial policy in California to give the defendant "`the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.'" (People v. Ralph (1944) 24 Cal.2d 575, 581 [150 P.2d 401], quoting Ex parte Rosenheim (1890) 83 Cal. 388, 391 [23 P. 372]; accord, People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; see United States v. Bass (1971) 404 U.S. 336, 347 [30 L.Ed.2d 488, 92 S.Ct. 515] ["`[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'"].) Thus, "`[w]hen language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute.'" (People v. Snyder (2000) 22 Cal.4th 304, 314 [92 Cal.Rptr.2d 734, 992 P.2d 1102], quoting People v. Overstreet (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].)
[7] The phrase "in every case" was apparently taken from the 1982 voter initiative called the Victim's Bill of Rights. The initiative added article I, section 28, subdivision (b) to the California Constitution, which established the right of crime victims to receive restitution directly "from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).) The new provision stated, "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer, [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Ibid., italics added.)

The new provision, which was not self-executing, also directed the Legislature to adopt implementing legislation, and one piece of responsive legislation was section 1202.4 (People v. Narron (1987) 192 Cal.App.3d 724, 732, fn. 4 [237 Cal.Rptr. 693]; see People v. Giordano (2007) 42 Cal.4th 644, 651-654 [68 Cal.Rptr.3d 51, 170 P.3d 623] [reviewing the history of California's restitution statutes].)
[8] We do not intend to suggest that a restitution fine in excess of $10,000 may not be part of a plea bargain that resolves multiple cases at one time or that where a defendant agrees to such a fine, he or she may later challenge it as unauthorized. (See People v. Crandell (2007) 40 Cal.4th 1301, 1309 [57 Cal.Rptr.3d 349, 156 P.3d 364] [the parties "are free, within such parameters as the Legislature may establish, to reach any agreement concerning the amount of restitution (whether by specifying the amount or by leaving it to the sentencing court's discretion) they find mutually agreeable"].) As noted, when the trial court has fundamental jurisdiction and when a defendant has pleaded guilty in return for a specified disposition, he or she may not seek a better deal on appeal by claiming that parts of the agreed-upon disposition were unauthorized. (People v. Hester, supra, 22 Cal.4th 290, 295.)