[No. H024743. Sixth Dist. Feb. 6, 2004.]

THE PEOPLE, Plaintiff, v.
CHARLES LEONARD CONNOR, Defendant and Appellant;
SAN JOSE MERCURY NEWS, INC., Petitioner and Respondent.

670

**COUNSEL**

Korda, Johnson & Wall and Charles William Hendrickson for Defendant and Appellant.

Gray, Cary, Ware & Freidenrich, Edward P. Davis, Jr., James M. Chadwick and Danielle Van Wert for Petitioner and Respondent.

Opinion

WUNDERLICH, J.—

## I. Introduction

Under Penal Code section 1203.05,[1] probation reports are open to the public without restriction for 60 days after judgment is pronounced or probation is granted, whichever is earlier. After that time, however, only specified persons retain the right to unfettered access. Nonspecified persons can gain access only "by order of the court, upon filing of a petition therefor by the person." (§ 1203.05, subdivision (b).) In this case, we determine what this restriction on access by nonspecified persons means and how the petition process operates.

 We find that the restriction was intended to restore to the subject of a probation report a measure of privacy concerning personal information in the report after the period of open access has expired. Accordingly, we hold that when a nonspecified person files a petition seeking a probation report, the subject of the report is entitled to notice and an opportunity to be heard at an in camera hearing concerning any personal information he or she does not want released. If the subject does not seek a hearing, then the court should release the entire probation report. However, if the subject seeks a hearing, then, after balancing the subject's interest in the confidentiality of personal information against the potential benefit from its release, the court may exercise its discretion to redact personal information. It should then release the remainder of the report.

## II. Statement of the Case

On January 17, 2001, defendant Charles Leonard Connor pleaded no contest to one count of committing a lewd act on a dependent adult. (§ 288, subd. (c)(2).) The Santa Clara County Probation Department filed its report on March 6, 2001, and on that day, the court suspended imposition of sentence and placed defendant on formal probation for three years with various conditions, including six months of electronic monitoring.

More than one year later, on April 19, 2002, the San Jose Mercury News, Inc. (the News) filed a petition under section 1203.05, subdivision (b) for access to defendant's probation report. On July 9, 2002, the court granted the petition. In its decision, the court found that it had broad discretion concerning whether to grant or deny a petition in furtherance of justice. After

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

balancing defendant's constitutional right to privacy against the News's common law right of access to judicial records, the court concluded that the balance tipped in favor of the News.

Defendant appeals from the order. We reverse it and remand the matter for further proceedings.

### III. Contentions of the Parties

The parties stake out diametrically opposed positions concerning the meaning of section 1203.05. According to defendant, the statute establishes a presumption of confidentiality concerning probation reports after the 60-day period has expired. Thus, to obtain access, a petitioner must overcome the presumption and can do so only by showing a compelling need that furthers the ends of justice. Defendant contends that the trial court erred in failing to recognize the presumption of confidentiality and in considering irrelevant factors, such as the objectives of sentencing and the circumstances that support releasing a defendant on probation. Defendant further contends that the News failed to overcome the presumption of confidentiality.

According to the News, the statute establishes a presumption of access. Thus, when a petition is filed, the court must release the probation report unless the defendant overcomes the presumption by showing that disclosure will jeopardize a compelling interest. The News argues that although the trial court erroneously found that it had broad discretion over the petition, it correctly concluded that defendant had failed to overcome the presumption of access.

Initially, however, the News claims that the order granting its petition is not appealable, and therefore we must dismiss the appeal.

### IV. Appealability of an Order Granting Access to a Probation Report

There is no constitutional right of appeal from a judgment or order in criminal cases; rather the right of appeal is statutory. (See *People v. Mazurette* (2001) 24 Cal.4th 789, 792 [102 Cal.Rptr.2d 555, 14 P.3d 227] [" 'It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute' "]; *People v. Garrett* (1998) 67 Cal.App.4th 1419, 1421 [79 Cal.Rptr.2d 803]; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1659 [17 Cal.Rptr.2d 445].) In particular, section 1237 authorizes an appeal from a "final judgment" or "any order made after judgment, affecting the substantial rights of the party." (§ 1237, subds. (a) & (b).)

The order here is not a final judgment but an order made after final judgment. Thus, the viability of defendant's appeal depends on whether the order affects his substantial rights.

Defendant claims the order affects his right to confidentiality concerning the probation report. The News claims that the statute does not confer confidentiality and does not affect any privacy interest because it merely provides access to information that is already a matter of public record. Given the parties' positions, we can settle the issue of appealability only by resolving their dispute concerning the purpose and meaning of section 1203.05.

■ In construing statutory language, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*In re Harris* (1993) 5 Cal.4th 813, 844 [21 Cal.Rptr.2d 373, 855 P.2d 391].) We begin by examining the statutory language, giving the words their usual and ordinary meaning. If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) If, on the other hand, the statutory language is unclear or ambiguous and permits more than one reasonable interpretation, we may consider various extrinsic aids to help us ascertain the Legislature's intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. (*Ibid.*; *People v. Garrett* (2001) 92 Cal.App.4th 1417, 1422 [112 Cal.Rptr.2d 643].) In such circumstances, we select the interpretation that comports most closely with the apparent intent of the Legislature, with a view toward promoting, rather than defeating, the general purpose of the statute and avoiding an interpretation that would lead to absurd consequences. (*People v. Walker* (2002) 29 Cal.4th 577, 581 [128 Cal.Rptr.2d 75, 59 P.3d 150].)

Section 1203.05 provides, "Any report of the probation officer filed with the court, including any report arising out of a previous arrest of the person who is the subject of the report, may be inspected or copied only as follows: [¶] (a) By any person, from the date judgment is pronounced or probation granted or, in the case of a report arising out of a previous arrest, from the date the subsequent accusatory pleading is filed, to and including 60 days from the date judgment is pronounced or probation is granted, whichever is earlier. [¶] (b) By any person, at any time, by order of the court, upon filing a petition therefor by the person. [¶] (c) By the general public, if the court upon its own motion orders that a report or reports shall be open or that the contents of the report or reports shall be disclosed. [¶] (d) By any person

authorized or required by law to inspect or receive copies of the report. [¶] (e) By the district attorney of the county at any time. [¶] (f) By the subject of the report at any time."

■ The language of the statute is plain and clear: (1) Specified persons— i.e., the subject of a report (hereafter referred to as "the" or "a" defendant), the district attorney, and any person authorized or required by law to see or receive the report—have unfettered access to reports at any time; (2) non-specified persons and the general public have unfettered access to reports for only 60 days; (3) after that time, they have access only by court order. We find these provisions unambiguous insofar as they reflect an intent *to restrict* access to probation reports by nonspecified persons and the general public after the 60-day period has expired.

To help ascertain the purpose of this restriction, we first presume that in enacting, reenacting, and amending the statute, the Legislature was aware of existing law and rules of court concerning the type of information contained in probation reports.[2] (See *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 [96 Cal.Rptr.2d 463, 999 P.2d 686] [courts presume Legislature aware of existing law]; *In re Alyssa H.* (1994) 22 Cal.App.4th 1249, 1253 [27 Cal.Rptr.2d 809] [and rules of court].) Pertinent in this regard is section 1203, subdivision (b)(1), which provides, in relevant part, "[I]f a person is convicted of a felony and is eligible for probation, before judgment is pronounced, the court shall immediately refer the matter to a probation officer to investigate and report to the court, at a specified time, upon the circumstances surrounding the crime and the prior history and record of the person, which may be considered either in aggravation or mitigation of the punishment." We also note that section 1203.10 more specifically provides, in relevant part, "At the time of the plea or verdict of guilty of any person over 18 years of age, the probation officer of the county of the jurisdiction of said criminal shall, when so directed by the court, inquire into the antecedents, character, history, family environment, and offense of such person, and must report the same to the court and file his report in writing in the records of such court."

To implement these statutes, rule 4.411.5 of the California Rules of Court provides, in relevant part, "(a) A probation officer's presentence investigation report in a felony case shall include at least the following: [¶] (1) A face sheet showing at least: (i) the defendant's name and other identifying data; (ii) the case

---

[2] As discussed more fully below, section 1203.05 was enacted in 1971. At that time, the statute provided for a 30-day period of open access. (Stats. 1971, ch. 869, § 1, p. 1710.) In 1981, it was repealed and reenacted to provide for a 60-day period. (Stats. 1981, ch. 283, §§ 1 & 2, pp. 1400–1401.) In 1997, it was amended to expand the list of specified persons. (Stats. 1997, ch. 128, § 1.)

number; (iii) the crime of which the defendant was convicted; (iv) the date of commission of the crime, the date of conviction, and any other dates relevant to sentencing; (v) the defendant's custody status; and (vi) the terms of any agreement upon which a plea of guilty was based. [¶] (2) The facts and circumstances of the crime and the defendant's arrest, including information concerning any codefendants and the status or disposition of their cases. . . . [¶] (3) A summary of the defendant's record of prior criminal conduct, including convictions as an adult and sustained petitions in juvenile delinquency proceedings. Records of an arrest or charge not leading to a conviction or the sustaining of a petition shall not be included unless supported by facts concerning the arrest or charge. [¶] (4) Any statement made by the defendant to the probation officer, or a summary thereof, including the defendant's account of the circumstances of the crime. [¶] (5) Information concerning the victim of the crime, including: (i) the victim's statement or a summary thereof, if available; (ii) the amount of the victim's loss, and whether or not it is covered by insurance; and (iii) any information required by law. [¶] (6) Any relevant facts concerning the defendant's social history, including but not limited to those categories enumerated in Penal Code section 1203.10, organized under appropriate subheadings, including, whenever applicable, 'Family,' 'Education,' 'Employment and income,' 'Military,' 'Medical/psychological,' 'Record of substance abuse or lack thereof,' and any other relevant subheadings. [¶] (7) Collateral information, including written statements from: (i) official sources such as defense and prosecuting attorneys, police (subsequent to any police reports used to summarize the crime), probation and parole officers who have had prior experience with the defendant, and correctional personnel who observed the defendant's behavior during any period of presentence incarceration; and (ii) interested persons, including family members and others who have written letters concerning the defendant. [¶] (8) An evaluation of factors relating to disposition. This section shall include: (i) a reasoned discussion of the defendant's suitability and eligibility for probation, and if probation is recommended, a proposed plan including recommendation for the conditions of probation and any special need for supervision; (ii) if a prison sentence is recommended or is likely to be imposed, a reasoned discussion of aggravating and mitigating factors affecting the sentence length; and (iii) a discussion of the defendant's ability to make restitution, pay any fine or penalty which may be recommended, or satisfy any special conditions of probation which are proposed. Discussions of factors affecting suitability for probation and affecting the sentence length shall refer to any sentencing rule directly relevant to the facts of the case, but no rule shall be cited without a reasoned discussion of its relevance and relative importance. [¶] (9) The probation officer's recommendation. . . . [¶] (10) Detailed information on presentence time spent by the defendant in custody, including the beginning and ending dates of the period(s) of custody; the existence of any other sentences imposed on the defendant during the

period of custody; the amount of good behavior, work, or participation credit to which the defendant is entitled; and whether the sheriff or other officer holding custody, the prosecution, or the defense wishes a hearing be held for the purposes of denying good behavior, work, or participation credit."

■ As these provisions reveal, a probation report is designed to contain narrative information about a defendant's offense, statements from the victim, analyses of sentencing factors, and recommendations concerning the appropriate disposition. However, it is also designed to contain highly personal information about the defendant, including his or her arrest record; family background; and employment, military, medical, and psychological histories. Because a restriction on access is, in effect, a type of shield, we infer that the restriction in section 1203.05 is directed at the personal information, which might ordinarily be confidential, rather than the nonpersonal information, such as the factual summary of an offense and the evaluations, analyses, calculations, and recommendations of the probation officer.

The legislative history of the statute supports this inference.[3] Since 1947, probation reports have been required in felony cases where a defendant is eligible for probation. (See Stats. 1947, ch. 1178, § 2, p. 2660; Melnick, Comment: *Probation in California: Penal Code Section 1203* (1962) 50 Cal. L.Rev. 651, 653.) Until 1971, reports were available to the public without any limitation. However, in 1971, Senator Albert S. Rodda introduced Senate Bill No. 1180 (1971 Reg. Sess.) to add section 1203.05 to the Penal Code. After going

---

[3] The record contains two declarations submitted by defendant from Dorothy H. Thompson, Director, Legislative Intent Service, who attached as exhibits numerous documents that her staff retrieved in a search for the legislative history of the former and current versions of section 1203.05. Although defendant relied on these documents in his opposition to the News's petition, he did not formally ask the trial court to take judicial notice of them. However, we assume the court did so on its own motion because it summarized some of the exhibits in its decision.

■ Courts may take judicial notice of relevant legislative history to resolve ambiguities and uncertainties concerning the purpose and meaning of a statute. (See Evid. Code, § 452, subd. (c) [permitting judicial notice of official acts of the Legislature]; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 [77 Cal.Rptr.2d 709, 960 P.2d 513].) Moreover, as a reviewing court, we must, and here do, take judicial notice of those materials properly noticed by the trial court, including enrolled bill reports to the governor and legislative committee and caucus reports, work sheets, and digests. (Evid. Code, § 459, subd. (a); *In re J. W.* (2002) 29 Cal.4th 200, 211 [126 Cal.Rptr.2d 897, 57 P.3d 363]; *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 276, fn. 9 [41 Cal.Rptr.2d 220, 895 P.2d 56]; e.g., *Lolley v. Campbell* (2002) 28 Cal.4th 367, 375 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [enrolled bill report to governor]; *People v. Snyder* (2000) 22 Cal.4th 304, 310 [92 Cal.Rptr.2d 734, 992 P.2d 1102] [party caucus reports]; *People v. Neild* (2002) 99 Cal.App.4th 1223, 1227 [121 Cal.Rptr.2d 803] [committee report]; *Forty-Niner Truck Plaza, Inc. v. Union Oil Co.* (1997) 58 Cal.App.4th 1261, 1273 [68 Cal.Rptr.2d 532] [bill analysis worksheet]; *Natural Resources Defense Council v. Fish & Game Com.* (1994) 28 Cal.App.4th 1104, 1118 [33 Cal.Rptr.2d 904] [worksheet]; *Wallin v. Vienna Sausage Manufacturing Co.* (1984) 156 Cal.App.3d 1051, 1054 [203 Cal.Rptr. 375] [bill digest].)

through various revisions, the measure was passed and signed by the governor.[4] (See Stats. 1971, ch. 869, § 1, p. 1710.) A description of the legislation in the Bill Digest for the Assembly Committee on Criminal Justice as amended August 11, 1971, stated that "[p]resent law does not limit public access to adult probation reports," but Rodda's bill "limits and restricts public access to adult probation reports." In the comment section, the Digest states that "[t]he purpose of this bill is to limit public access to probation reports" and "provides that probation reports are not open for public inspection." (Underscoring in original.) The Digest further explains that the bill does provide "unrestricted access to these reports for a 30 day period which is for the convenience of the press." The Digest also posed some questions. "Is the 30 day period too long to afford the citizen a right to privacy? Couldn't the press accomplish this task in a shorter time period that [sic] 30 days?" An additional question is based on the fact that there are no enforcement provisions: "Would a person having a right to the records (such as court employees, etc.) be subject to contempt proceedings if they [sic] violated the privacy of the records and informed other persons?"

In a bill analysis work sheet prepared for the Assembly Committee, Senator Rodda's office responded to several questions about the bill, including the following: (1) What is the source of the bill? (2) Has a similar bill been before the Legislature? (3) What is the problem or deficiency in the present law that the bill seeks to remedy? (Assem. Com. on Crim. Justice, Bill Analysis Work Sheet, Sen. Bill No. 1180 (1971 Reg. Sess.).) The Analysis explained that "[t]he original idea [for the bill] came from a constituent who had been found guilty, along with her husband, of child abuse. She wanted the code changed to provide that all probation reports be confidential. We started at that point." (Id. at p. 2, original underscoring.) The Analysis reported that there was related legislation. "AB 904 by Assemblyman Murphy (Chapter 497, 1970)[5] provided that a court '. . . may order any records sealed under this section to be

---

[4] As originally enacted, the statute provided as follows: "(a) Except as provided in subdivision (b) or (c), after 30 days from the date judgment is pronounced or probation is granted, any report of the probation officer filed with the court may be inspected by court personnel and shall be made available only to persons authorized or required by law to inspect or receive copies of the report and shall not be open to public inspection. [¶] (b) Any other person may inspect or receive copies of the report at any time by order of the court upon filing a petition therefor. In addition, the court, on its own motion, may at any time make the report public or disclose its contents. [¶] (c) Any person is entitled to inspect or receive copies of a probation report that is not otherwise open to inspection or copying under subdivision (a) if another accusatory pleading, arising out of a subsequent arrest, is filed with respect to the person who is the subject of the report. In such a case, the report shall be open to inspection or copying until such time as there is a final disposition of the case. Thereafter, the report shall be subject to the applicable provisions of subdivision (a) or (b)." (Stats. 1971, ch. 869, § 1, p. 1710.)

[5] See Welfare and Institutions Code former section 781 (Stats. 1970, ch. 497, § 3), now section 389 [petition to seal records in juvenile cases].

opened and admitted into evidence.' The records were relevant to a minor petitioning to have records sealed." (*Ibid.*) Concerning the purpose of the bill, the Analysis explained, "The public's 'right to know' does not totally exclude the citizen's right to privacy. We have no intention of preventing anyone with authority granted by a court from examining the records. It will stop curious neighbors and sensation seek[e]rs from going to the court house and reading the reports for 'kicks.' " (*Ibid.*)

After Senator Rodda's bill was unanimously passed by both the Assembly and the Senate, the enrolled bill was sent to Governor Ronald Reagan for his signature. A report prepared for the governor stated that the bill "[m]akes probation reports confidential 30 days after sentencing is pronounced." (Cal. Dept. Corrections, Enrolled Bill Rep. on Sen. Bill No. 1180 (1971 Reg. Sess.) Sept. 22, 1971.) The report further explained, "Generally the bill would restrict availability of probation reports after 30 days from the date judgment is pronounced or probation granted. In the interim the report would remain open to the public as it is now. This is apparently a compromise with the press and others concerned with freedom of information and open records and those who hold that the probation officer could provide the court with a more informative report if he and his sources were assured that the report would not be open to public inspection. Whether that objective will be served as the bill is written is doubtful. It will, however, provide a measure of protection from invasion of privacy years later for persons connected with sensational cases. Provision is made for opening the records by the court under appropriate circumstances. The bill does not affect Corrections or Youth Authority's use of the reports." (*Ibid.*)

In 1981, Senator John W. Holmdahl introduced Senate Bill No. 166 (1981–1982 Reg. Sess.) to repeal the existing statute and replace it with a reworded version. The bill passed the Senate and Assembly and was signed by Governor Jerry Brown.[6] (See Stats. 1981, ch. 283, §§ 1 & 2, pp. 1400–1401.) Although the new statute was substantially reworded, the only significant change was to extend the open-access period from 30 to 60 days.

---

[6] The 1981 version of the statute provided as follows: "Any report of the probation officer filed with the court, including any report arising out of a previous arrest of the person who is the subject of the report, may be inspected or copied only as follows: [¶] (a) By any person, from the date judgment is pronounced or probation granted or, in the case of a report arising out of a previous arrest, from the date the subsequent accusatory pleading is filed, to and including 60 days from the date judgment is pronounced or probation is granted, whichever is earlier. [¶] (b) By any person, at any time, by order of the court, upon filing a petition therefor by such person. [¶] (c) By the general public, if the court upon its own motion orders that a report or reports shall be open or that the contents of the report or reports shall be disclosed. [¶] (d) By any person authorized or required by law to inspect or receive copies of the report." (Stats. 1981, ch. 283, § 2, pp. 1400–1401.)

A report to the Senate Committee on Judiciary explained the purpose of the new version of the statute. "To clarify the language of the statute; to increase the number of days probation reports are available. With respect to the latter, there have on occasion been delays in getting probation reports into clerks [*sic*] files, and delays publishing lists of sentenced cases. These delays, particularly in publishing lists of sentenced cases, have often exceeded the 30 days now specified, so that opportunities for public scrutiny of reports is [*sic*] effectively barred." (Sen. Com. on Judiciary, Background Information Sheet, Sen. Bill No. 166 (1981–1982 Reg. Sess.) as introduced (Senate Bill No. 166).)

A report for the Assembly Committee on Criminal Justice on Senate Bill No. 166, the Senate Republican and Democratic Caucus reports on the bill, and the Assembly third reading digest of the bill similarly state that under existing law, the public has access to probation reports for 30 days from the day judgment is pronounced or probation is granted, and the primary purpose of Senate Bill No. 166 is to increase this period to 60 days because, as proponents argue, administrative delays in making the reports readily available made a longer period necessary. (Sen. Republican Caucus, Dig. of Sen. Bill. No. 166, as amended May 14, 1981; Sen. Democratic Caucus, Dig. of Sen. Bill No. 166, as amended May 14, 1981; Assem. Com. on Crim. Justice, report on Sen. Bill No. 166, as amended May 14, 1981; Assem. 3d reading analysis of Sen. Bill No. 166, as amended May 14, 1981.)

In 1997, the Legislature made a minor stylistic change to subdivision (c) and added subdivisions (e) and (f), expanding the list of specified persons to include the district attorney and the subject of a probation report. (Stats. 1997, ch. 128, § 1.)

■ The legislative material summarized above indicates that the legislation was precipitated by a constituent who wanted probation reports to be kept confidential. It further reflects that the Legislature was concerned about a defendant's loss of privacy due to information in the probation report and his or her *continued* loss of privacy after sentencing. This material, especially the reference to legislation related to sealing juvenile records, makes it clear that the Legislature intended to restrict access to private information in a report and thereby restore a measure of the privacy lost during the initial period of public access. However, this material also indicates that the Legislature rejected a total restriction on access to probation reports and opted instead to simply limit the period of open access. Thus, the legislative material reflects a basic affirmation of the state's tradition of access to probation reports. Viewed in light of its legislative history, therefore, the statute represents a legislative determination that (1) after 60 days, a defendant still has a privacy interest in personal information in his or her probation report that is entitled to some protection (see Cal. Const., art. I, § 1 ["[a]ll people" have an

unalienable right of privacy]); (2) this interest outweighs the interests of nonspecified persons and the general public in *continued* unfettered access to this personal information; and therefore (3) the courts should have some control over access after the 60-day period has expired. Thus, in general, we agree with defendant that section 1203.05 in effect renders probation reports, or at least any detailed personal information contained in them, conditionally confidential 60 days after judgment is pronounced or probation granted, whichever is earlier.

In claiming that the statute does not confer any right to confidentiality, the News argues that when the Legislature intends to make records confidential, it knows how to do so. (See, e.g., Bus. & Prof. Code, § 11317; Educ. Code, § 49073.5; Fam. Code, § 17212; Gov. Code, § 6254.14; Health & Saf. Code, § 128735; Pen. Code, § 832.7; Rev. & Tax. Code, § 14251; Welf. & Inst. Code, §§ 827, subd. (b)(1), 828.1, 5328 & 11478.1.) Thus, since section 1203.05 does not expressly make reports confidential or clearly articulate an intent to do so, we should infer a contrary intent. We are not persuaded.

This court and others have employed this type of inferential reasoning most often when a statute is truly silent concerning whether it was designed to have a certain effect and does not contain language that in other statutes clearly achieves that effect. (See, e.g., *People v. Murphy* (2001) 25 Cal.4th 136, 159 [105 Cal.Rptr.2d 387, 19 P.3d 1129] ["Legislature has shown that when it wants a sentence calculated without consideration of some circumstance, it knows how to use language clearly expressing that intent"]; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 999 [73 Cal.Rptr.2d 682, 953 P.2d 858] ["We note that when the Legislature intends to restrict the recovery of costs to just one side of a lawsuit, it knows how to express such restriction"]; *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 911 [114 Cal.Rptr.2d 708] ["Thus one can infer that the Legislature, if it intends a stated remedy to be nonexclusive or cumulative, knows how to express such a concept, and its silence on the subject therefore indicates a contrary intent"].) However, we are not aware of any law or rule that requires the Legislature to use the same statutory language or method to achieve the same result. (See *In re Pedro T.* (1994) 8 Cal.4th 1041, 1049 [36 Cal.Rptr.2d 74, 884 P.2d 1022].) Therefore, while this inferential reasoning may be helpful, it does not invariably reveal a legislative intent *not* to accomplish a particular result that is achieved in statutes with more explicit language. This is especially so here, where, as discussed above, the legislative history and the very structure of the statute—the method of restricting access—reveal a legislative intent to confer conditional confidentiality after a 60-day period of open access.

We find support for our view in Welfare and Institutions Code section 827, subdivision (a), in which the Legislature uses a similar method to restrict access to confidential information. Like section 1203.05, this statute allows specified persons unfettered access to juvenile records but also has a general provision for inspection by nonspecified persons: The records may also be inspected by "[a]ny other person who may be designated by court order of the judge of the juvenile court upon filing a petition." (Welf. & Inst. Code, § 827, subd. (a)(1)(M).) Although this particular subdivision does not expressly make juvenile court records confidential, it is beyond dispute that they are confidential because in another subdivision and in related statutes, the Legislature expressly states that records related to juvenile proceedings should be "confidential." (Welf. & Inst. Code, §§ 827, subd. (b)(1) [the Legislature "reaffirms its belief that juvenile court records, in general, should be confidential . . . ."], 827.9, subd. (a) ["It is the intent of the Legislature to reaffirm its belief that records or information gathered by law enforcement agencies relating to the taking of a minor into custody, temporary custody, or detention (juvenile police records) should be confidential"], 828.1, subd. (a) ["[T]he Legislature reaffirms its belief that juvenile criminal records, in general, should be confidential"].)

The purpose for keeping a minor's juvenile records confidential is to promote his or her best interests, facilitate rehabilitation or family reunification, and protect the minor from present and future adverse consequences and unnecessary emotional harm. (See *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 778 [94 Cal.Rptr. 813, 484 P.2d 981].) In restoring a measure of privacy to a defendant, section 1203.05 serves similar protective and rehabilitative purposes. We recognize that while there has always been a strong public policy in keeping juvenile records confidential (see *T.N.G. v. Superior Court, supra*, 4 Cal.3d 767), there is a contrary tradition of open access to probation reports. Nevertheless, the use of the same method of restricting access to records in section 1203.05 and Welfare and Institutions Code section 827 implies that the Legislature found that minors and defendants share an interest in the confidentiality of certain information.

Next, we reject the News's argument that the court's order did not affect a substantial interest because it merely provided access to information that was already a matter of public record. The probation report was public for only 60 days. After that time, the report became conditionally confidential by operation of law, the information in the report, especially personal information, was no longer generally available or still a matter of *public* record, and defendant gained statutory protection for his privacy concerning that information.

█ In sum, therefore, we conclude that under section 1203.05, defendant gained conditional confidentiality concerning at least personal information in

his probation report after the 60-day period expired. The trial court's order affected defendant's statutory right to such confidentiality. Thus, we hold that the order is appealable under section 1237, subdivision (b).

## V. **Operation of Section 1203.05**

Defendant and the News agree, albeit for different reasons, that the trial court misapplied section 1203.05. Only defendant, however, challenges the propriety of the court's order. To evaluate the trial court's ruling and order, we must first determine how the statute was intended to apply.

As noted, defendant claims that the statute establishes a presumption of confidentiality, and therefore the court may not release a report unless the petitioner makes a compelling showing of need to serve the ends of justice. In support of his claim, defendant argues that the main reason for making reports confidential is to facilitate the flow of candid information from a variety of sources, including the defendant, to the probation officer and ultimately the court and thereby ensure that sentencing decisions are as well informed as possible. In this regard, defendant relies on a 1971 letter from Donald W. Swank, Director of the Sacramento County Probation Department, to Senator Rodda expressing his opinion that probation reports should not be available to the public. Defendant also relies on federal cases and practice. We find defendant's position unpersuasive.

As noted, we have taken judicial notice of all legislative history materials *properly* noticed by the trial court. (*Ante*, fn. 3.) As a general rule, courts decline to take notice of letters that express the writer's personal opinions related to proposed legislation. (Compare *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699–701 [170 Cal.Rptr. 817, 621 P.2d 856] [declining to take judicial notice of a letter by Sen. Rodda to then Gov. Reagan concerning a different bill] with *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589–590, & fn. 5 [128 Cal.Rptr. 427, 546 P.2d 1371] [taking judicial notice of letter discussing the argument and debate before the Assembly that led to passage of bill]; see *People v. Patterson* (1999) 72 Cal.App.4th 438, 442–443 [84 Cal.Rptr.2d 870] [taking selective judicial notice of only those materials of legislative history relevant in determining intent and meaning].)

Here, the record does not suggest that Director Swank's letter was available to or considered by the legislators when they voted on Senator Rodda's bill. Thus, although the letter is part of the record on appeal, we do not find it properly subject to judicial notice and decline to consider it.

Next, the legislative history properly subject to notice does not suggest that section 1203.05 was designed to encourage people to talk more freely to probation officers. The statute was specifically intended to restore some

privacy to defendants concerning personal information in probation reports and at the same time reaffirm the state's tradition of open access. Moreover, we question whether a person, aware that a probation report is open to the public for 60 days, would be more candid than he or she would otherwise be if he or she also knew that public access lasted only 60 days.[7]

Next, we find defendant's reliance on federal cases and practice to be misplaced. The federal view of probation reports and access to them contrasts sharply with California's tradition of open access. In the federal system, probation reports—called presentence investigative reports (see Fed. Rules Crim. Proc., rule 32, 18 U.S.C.)—are kept confidential from the start. (See Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts* (1980) 93 Harv. L.Rev. 1613, 1683–1685 (hereafter Fennell); Annot., Disclosure to Third Party of Presentence Report Under Rule 32(c), Federal Rules of Criminal Procedure (1989) 91 A.L.R.Fed. 816.) Indeed, at one time, presentence reports were not even disclosed to the defendant. (See *U.S. v. Trevino* (4th Cir. 1996) 89 F.3d 187, 190; *U.S. v. Corbitt* (7th Cir. 1989) 879 F.2d 224, 229.) Over the years, however, rule 32(c) of the Federal Rules of Criminal Procedure (the Rule), which governs all aspects of presentence reports, was amended to require disclosure to the defendant, defense counsel, and government attorneys. (See *United States Dept. of Justice v. Julian* (1988) 486 U.S. 1, 9 [100 L.Ed.2d 1, 108 S.Ct. 1606]; *U.S. v. Schlette* (9th Cir. 1988) 842 F.2d 1574, 1578.)

Although the Rule has always been silent concerning disclosure to third parties, federal courts have been "very reluctant to give third parties access to the presentence investigation report prepared for some other individual or individuals. [Citations.]" (*United States Dept. of Justice v. Julian, supra,* 486 U.S. at p. 12, italics omitted; see *U.S. v. Smith* (5th Cir. 1994) 13 F.3d 860, 867 ["general presumption that courts will not grant third parties access to the presentence reports of other individuals"]; *U.S. v. Schlette, supra,* 842 F.2d at p. 1579 ["a strong presumption in favor of confidentiality"].) Despite the lack of an express prohibition against such disclosure, courts have deferred to the long tradition of strict confidentiality. Some have prohibited any disclosure to third parties. Most courts, however, take a less absolute approach and permit disclosure if, balanced against the desirability of confidentiality, disclosure is *necessary* to serve the ends of justice. (*U.S. v. Corbitt, supra,* 879 F.2d at p. 229; *U.S. v. Schlette, supra,* 842 F.2d at p. 1579; *United States v. McKnight*

---

[7] There is a contrasting and strong tradition of confidentiality concerning juvenile records, which, as the court in *In re Keisha T.* (1995) 38 Cal.App.4th 220, 240 [44 Cal.Rptr.2d 822], explained "encourages full disclosure, by the minor and others, of all information necessary for proper functioning of the juvenile welfare system." (See *T.N.G. v. Superior Court, supra,* 4 Cal.3d at p. 778; *San Bernardino County Dept. of Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188, 197–199 [283 Cal.Rptr. 332].)

(8th Cir. 1985) 771 F.2d 388, 390; *United States v. Charmer Industries, Inc.* (2d Cir. 1983) 711 F.2d 1164, 1173, and cases collected there; see *United States Dept. of Justice v. Julian, supra,* 486 U.S. at p. 12 ["[C]ourts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report"]; see also Fennell, *supra,* 93 Harv. L.Rev. at pp. 1683–1685.) Even under this approach, most courts have denied access, finding disclosure unnecessary to meet the ends of justice. (*United States v. Charmer Industries, Inc., supra,* 711 F.2d 1164; but see *U.S. v. Schlette, supra,* 842 F.2d at p. 1579 [permitting access].)

Federal cases cite two main policy reasons for keeping presentence reports strictly confidential. First, confidentiality is considered necessary to ensure the full and free flow of relevant information from a variety of other people, including the defendant, informants, and family members, whose willingness to provide information would be inhibited if they feared disclosure.[8] (*United States Dept. of Justice v. Julian, supra,* 486 U.S. at p. 12; *United States v. Huckaby* (5th Cir. 1995) 43 F.3d 135, 138; *U.S. v. Corbitt, supra,* 879 F.2d at pp. 229, 232–234; *U.S. v. Schlette, supra,* 842 F.2d at p. 1579; *United States v. McKnight, supra,* 771 F.2d at p. 390; *United States v. Charmer Industries, Inc., supra,* 711 F.2d at pp. 1170, 1173; see Fennell, *supra,* 93 Harv. L.Rev. at p. 1684.) Second, maintaining strict confidentiality protects the privacy interests of the defendant, his family, and the victim because the presentence report may contain information about defendant's health, family ties, education, financial status, mental and emotional condition, prior criminal history, and uncharged crimes as well as personal information about the victim. (*United States v. Huckaby, supra,* 43 F.3d at p. 138; *U.S. v. Corbitt, supra,* 879 F.2d at pp. 229–232, 235; see *United States Dept. of Justice v. Julian, supra,* 486 U.S. at p. 12.)[9]

Not all of the circumstances that have led federal courts to recognize a presumption of confidentiality and impose a high burden on third party access exist in California. We do not have a long tradition of strict confidentiality; and the confidentiality that section 1203.05 confers was not designed to

---

[8] There is, however, disagreement concerning whether this consideration reasonably justifies keeping reports from third parties. (Compare *U.S. v. Schlette, supra,* 842 F.2d at pp. 1580–1581 [questioning the analytical and empirical validity of this consideration] with *U.S. v. Corbitt, supra,* 879 F.2d at pp. 232–235 [rejecting *Schlette* and affirming reliance on this policy consideration].)

[9] Many other states also consider probation reports confidential and restrict access by third parties. (See, e.g., *State v. Fair* (1985) 197 Conn. 106 [496 A.2d 461]; *Halacy v. Steen* (Me. 1996) 670 A.2d 1371; *Germain v. State of Maryland* (2001) 363 Md. 511 [769 A.2d 931]; *State v. Backus* (Minn. Ct. App. 1993) 503 N.W.2d 508; *State v. Ferbert* (1973) 113 N.H. 235 [306 A.2d 202]; *State v. De George* (1971) 113 N.J. Super. 542 [274 A.2d 593]; *In re Conduct of Collins* (1989) 308 Ore. 66 [775 P.2d 312]; *Com. v. Herrick* (1995) 442 Pa.Super. 412 [660 A.2d 51]; *State v. Cianci* (1984) 485 A.2d 565; *State v. Casarez* (Utah 1982) 656 P.2d 1005; *State of Vermont v. LaBounty* (1997) 167 Vt. 25 [702 A.2d 82].)

promote the flow of information. Although the statute and federal practice share the goal of protecting privacy, the statute does so only after permitting public access to reports for 60 days. Thus, the level of protection for this shared interest is different. Under the circumstances, defendant fails to convince us that it is either necessary or appropriate to adopt the federal approach to access by third parties.

Finally, we reiterate that the Legislature's concern for a defendant's privacy was focused solely on personal information in the probation report. However, in a given case, the report may not contain any personal information; it may contain only personal information that is readily available in other public documents; and the probation report contains much nonpersonal information. Defendant, however, urges us to recognize a broad presumption of confidentiality over the entire probation report. In our view, such a blanket presumption goes far beyond the purpose and intent of section 1203.05 and is not reasonably necessary to effectuate the purpose of the statute.

We now turn our attention to the News's interpretation of the statute. Taking the language of section 1203.05, subdivision (b) at face value—i.e., the report may be inspected "[b]y any person, at any time, by order of the court, upon filing a petition therefor by the person"—the News claims that the only prerequisite for access is the *filing* of a petition. Thus, when the News filed its petition, the court lacked discretion to deny it and was required to order disclosure.[10] According to the News, the petition requirement was not designed to interfere with the public's right to access but was intended only "to 'stop curious neighbors and sensation-seekrs [*sic*] from going to the court house and reading the reports for "kicks." ' " We do not find the News's position persuasive either.

Initially, we do not understand how the petition requirement, as conceived by the News, would or could prevent the curious and the sensation seekers

---

[10] Defendant points out that the News's position on appeal is at odds with its actions below. In its petition and points and authorities, the News did not argue that the court must grant access simply upon the filing of a petition. Nor did the News argue that the court lacked discretion over the petition. Rather, the News claimed there was good cause to release the report that outweighed any privacy defendant might claim. Specifically, the News asserted that release of the report "would confer a significant public benefit" because "[t]he public has a profound and legitimate concern regarding the manner in which sex offenders are sentenced and supervised[]" and "[t]he probation reports . . . will cast light on the propriety of the sentence [defendant] received, the conduct of the Probation Department in supervising his probation, and the actions of the Jesuit order in housing and supervising him following his conviction." The News also argued that access to reports under the First Amendment and section 1203.05 "directly serves the public interest in understanding and commenting on the manner in which the courts and law enforcement agencies are discharging their duties." On the other hand, the News argued that "[t]here is no countervailing interest that would justify nondisclosure of the probation reports." In conclusion, the News "respectfully requests that it be permitted forthwith to inspect and copy the probation reports . . . ."

from gaining access to probation reports. If the court must grant the petition, then the *filing* requirement poses no real barrier to access, and a person who wants to read a report, even just "for kicks," need only file a petition. In any event, we disagree with the News's view of the legislative intent and purpose of section 1203.05. As discussed above, the Legislature intended to *restrict* access to personal information in probation reports and thereby restore some privacy to a defendant after sentencing. The News's interpretation is inconsistent with any notion of restricting access or restoring privacy.

We acknowledge that when read literally and in isolation, section 1203.05, subdivision (b) arguably supports the News's claim that *filing* a petition is the only prerequisite to obtaining a report. However, basic principles of statutory construction require us to interpret a statute *as a whole* so as to make sense of the entire statutory scheme and not to view isolated statutory language out of context. (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1135 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)

Viewed together, the provisions of section 1203.05 distinguish specified persons from nonspecified persons and the general public: Specified persons have unfettered access to probation reports *at any time*; nonspecified persons and the general public do not. As to the latter, the statute further distinguishes access during and after the 60-day period: During the period, access is unfettered; after the period, a court order is required. Where, as here, the Legislature makes express statutory distinctions, "we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended. This concept merely restates another statutory construction canon: we presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language." *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894 [113 Cal.Rptr.2d 483]; accord, *Yao v. Superior Court* (2002) 104 Cal.App.4th 327, 333 [127 Cal.Rptr.2d 912].)

In our view, the News's interpretation renders the distinction between specified and nonspecified persons after the 60-day period meaningless. If the court must grant a petition, then the petition requirement is a mere procedural formality akin to asking library staff to retrieve a book from the stacks. Moreover, the court is relegated to the performance of a ministerial task: issuing a release order. In short, the petition and court order are mere paperwork that serve no real or effective purpose. We must, however, presume that the Legislature intended the distinctions it made, the petition, and the court's order to have meaning and a useful purpose. (See *Clements v. T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

The News suggests that the petition process is designed to place the defendant on notice that the court will release his or her probation report

unless he or she can demonstrate that release of the probation report will jeopardize a compelling interest. In other words, the statute establishes a presumption of access and imposes a high burden on the defendant to overcome it; and the petition process is designed to give him or her an opportunity to do so. We disagree with this view.

■ We now find it appropriate to employ the inferential reasoning previously advanced by the News. If the Legislature had intended to mandate access and place the burden on a defendant to prevent release, it knew how to do so more simply and directly. For example, there are numerous statutes that place a burden on persons who seek to prevent disclosure of certain records to file a petition to have the records sealed or destroyed. (E.g., § 851.7 [petition procedure to seal record of juvenile arrest for misdemeanor]; § 1203.45 [to seal minor's record of misdemeanor conviction]; Welf. & Inst. Code, § 389 [to seal juvenile dependency records]; Welf. & Inst. Code, § 781 [to seal juvenile wardship records]; cf. also § 1524, subd. (c) [party subject to search warrant required to designate documents to be sealed]; Cal. Rules of Court, rule 243.2 [procedures for filing records under seal]; see *Estate of Hearst* (1977) 67 Cal.App.3d 777 [136 Cal.Rptr. 821] [burden rests on the party seeking to deny public access to otherwise public court records].) Far from imposing any burden on the defendant, section 1203.05 expressly requires nonspecified persons to file a petition to obtain access. It is silent concerning whether a defendant bears any burden to prevent access. Consequently, we infer that the Legislature did not intend to impose such a burden. Our inference is consistent with the statute's language and history, which, as noted, indicate an intent to restrict access to personal information to protect a defendant's privacy. Under the circumstances, therefore, we decline to construe section 1203.05 to impose a burden on the defendant to prevent release because doing so would, in our view, violate the cardinal rule that courts may not add provisions to a statute or rewrite it to conform to an assumed intent that does not appear from its plain language. (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; *Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].)

The News argues that we must adopt its presumption-burden interpretation to avoid raising serious questions about the constitutionality of section 1203.05, specifically, whether it violates the First Amendment right of public access to court records. To address this argument, we briefly discuss the constitutional right of access.

The United States Supreme Court first recognized the public right of access as a facet of the First Amendment in cases involving the right to attend court *proceedings*. (See *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S.

555, 580–581 [65 L.Ed.2d 973, 100 S.Ct. 2814] [recognizing the right for the first time and reversing an order closing criminal trial because First Amendment guarantees the right to attend trials and related proceedings]; *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 604–605 [73 L.Ed.2d 248, 102 S.Ct. 2613] [statute mandating closed courtrooms when minors testify in criminal trials violates First Amendment right of access]; *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 513 [78 L.Ed.2d 629, 104 S.Ct. 819] [blanket order closing juror voir dire and withholding transcripts violated First Amendment]; *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 8–14 [92 L.Ed.2d 1, 106 S.Ct. 2735] [order closing preliminary hearing violated First Amendment]; *El Vocero de Puerto Rico v. Puerto Rico* (1993) 508 U.S. 147, 149–151 [124 L.Ed.2d 60, 113 S.Ct. 2004] [same].)

To determine whether the right of access attaches to a particular proceeding, the court adopted a two-part test based on (1) historical tradition—has the place or proceeding historically been open to the press and general public—and (2) the functional value of access—does access play "a significant positive role in the functioning of the particular process in question." (*Press-Enterprise Co. v. Superior Court, supra,* 478 U.S. at pp. 8–9.) As yet, the high court has not held that the First Amendment right of access applies to court *records,* except, perhaps, by implication, to the transcripts of proceedings the public has a First Amendment right to attend.[11] However, the California Supreme Court has observed, in dicta, that numerous appellate courts have extended the right of access to "civil litigation documents filed in court as a basis for adjudication" (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1208, fn. 25 [86 Cal.Rptr.2d 778, 980 P.2d 337]), citing numerous cases, including *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111 [7 Cal.Rptr.2d 841], where the court

---

[11] In *Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 597 [55 L.Ed.2d 570, 98 S.Ct. 1306], the United States Supreme Court recognized a separate "common-law right of access" to judicial records. (Cf. *Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469, 495 [43 L.Ed.2d 328, 95 S.Ct. 1029].) California recognizes a common law right of access to court records *except* those specifically exempted by statute, public policy, or the need for confidentiality. (*McGuire v. Superior Court* (1993) 12 Cal.App.4th 1685, 1687 [16 Cal.Rptr.2d 726]; *Estate of Hearst, supra,* 67 Cal.App.3d at pp. 782–783; *Craemer v. Superior Court* (1968) 265 Cal.App.2d 216, 222 [71 Cal.Rptr. 193] ["[W]here there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. In this regard, the term 'public policy' means anything [that] tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public or the public good"].)

Here, section 1203.05 makes probation reports conditionally confidential and therefore reflects a countervailing statute and policy that rebut any claim of access under the common law. (Cf. *Westbrook v. County of Los Angeles* (1994) 27 Cal.App.4th 157 [32 Cal.Rptr.2d 382] [presumption of access to court records inapplicable where statute restricts access and reflects countervailing public policy].)

observed that the First Amendment provides "broad access rights to judicial hearings and records. . . . both in criminal and civil cases." (But see *KNSD Channels 7/39 v. Superior Court* (1998) 63 Cal.App.4th 1200, 1203 [74 Cal.Rptr.2d 595] [judicial records are subject to right of access under the common law and *not* by virtue of the First Amendment].)

We observe that in jurisdictions where probation or presentence reports have historically been kept confidential, some courts have declined to recognize a First Amendment right of access to them. (See, e.g., *U.S. v. Corbitt, supra,* 879 F.2d at p. 229; *Baltimore Sun v. Thanos* (1992) 92 Md.App. 227, fn. 4 [607 A.2d 565, 568]; *State of Vermont v. LaBounty, supra,* 702 A.2d at pp. 83, 86.) The News points out, however, that in California, reports have historically been open to the public, and, therefore, the first prong of the high court's test is satisfied. We cannot disagree.

Concerning the second prong, the News argues that public access to probation reports and a presumption of access help "ensure that the public can review those judicial records that provide insight into how the criminal justice system works." More specifically, the News cites the observation by the Ninth Circuit Court of Appeals in *U.S. v. Schlette, supra,* 842 F.2d at page 1583, that " '[t]he penal structure is the least visible, least understood, least effective part of the justice system; and each . . . failure is consequent from the others. Public examination, study, and comment is [*sic*] essential if the corrections process is to improve.' [Citation.] The newspaper has a legitimate interest in explaining to a concerned public the means by which sentencing decisions are made. Making the public aware of how the criminal justice system functions surely serves the ends of justice." (Quoting *CBS Inc. v. United States Dist. Court* (9th Cir. 1985) 765 F.2d 823, 826.)

The News has a point to a degree. The role played by the probation department at sentencing may be one of the lesser known and least understood aspects of the process. Thus, access to the evaluations, analyses, and recommendations of the probation department in a probation report helps reveal the function played by the probation department at sentencing and its views and policies concerning particular crimes, the treatment of aggravating and mitigating circumstances, and the circumstances that warrant incarceration or probation. These analyses also provide important information concerning the relevant sentencing statutes and rules of court that govern the calculation of sentences, custody credit, and restitution. All of this type of information, in turn, helps explain the legal bases for a particular sentence and how the court arrived at it. In short, public access to this information necessarily ensures the integrity of the sentencing process and promotes public understanding of and confidence in that process; that is, access to it plays "a significant . . . role in the functioning of the [sentencing] process." (*Press-Enterprise Co. v. Superior Court, supra,* 478 U.S. at pp. 8–9.)

As noted, however, a probation report is a collection of information and contains a wide variety of material, including both highly personal details about a defendant and other nonpersonal information, analyses, evaluations, and recommendations. While the nonpersonal information discussed above sheds a strong light on the sentencing process, we question whether public access to details concerning a defendant's family background, medical and psychological condition, financial status, military record, history of substance abuse, etc.—information that most would consider confidential and try to keep private—similarly illuminates the sentencing process or plays an equivalent role in the proper functioning of the process.

In his concurring opinion in *Richmond Newspapers, Inc. v. Virginia, supra,* 448 U.S. 555, where the First Amendment right of access was first recognized, Justice Brennan warned that "the value of access must be measured in specifics. Analysis is not advanced by rhetorical statements that all information bears upon public issues; what is crucial in individual cases is whether access to a particular government process is important in terms of that very process." (*Id.,* at p. 58.)[12] Here, the News does not explain more specifically how *continued* access to detailed personal information after the 60-day period would significantly advance public understanding of the sentencing process beyond what nonpersonal information reveals and teaches about the process or how such access plays a significant role in the proper functioning of the sentencing process. Rather, the News relies on general rhetoric to the effect that open access fosters public understanding. Under the circumstances, we are not convinced that public access to probation reports *as a whole* satisfies the second prong of the test and, therefore, we are reluctant to recognize a broad First Amendment right of access to the entire report.

Nevertheless, because nonpersonal information in a report does play a role in the proper functioning of the sentencing process, the News has reasonable grounds to assert a First Amendment right of access. Therefore, we agree that in construing section 1203.05 we must be careful to avoid an interpretation that might cloud its constitutionality.

 With this and our goal of effectuating the legislative intent in mind, we now return to the statute and determine how it operates. Although the statute makes the *entire* probation report conditionally confidential after the 60-day period, regardless of whether it contains detailed personal information about the defendant, the Legislature's intent was more narrow: to restrict access only to personal information and restore some privacy to the

---

[12] Although Chief Justice Burger's lead opinion discussed the importance of there being a history of openness concerning a particular proceeding and the value access played in such proceedings, it was Justice Brennan's concurring opinion that most clearly articulated the two-part test that is now used.

defendant. Its intent was not to restrict access to other, nonpersonal information in a report. Moreover, by permitting open access for 60 days, the Legislature also intended to reaffirm the state's basic policy of openness. Given the intent to restore privacy, we conclude that section 1203.05, subdivision (b) gives trial courts discretion over whether to permit access to personal information in a report. Moreover, given the reaffirmation of the policy of open access and the constitutional implications discussed above, we further conclude that the court's discretion does not extend to nonpersonal information and, therefore, it must permit access to that information.

To effectuate the Legislature's intent and the purpose of the statute, therefore, we find that the statute contemplates a procedure whereby the court may hold a hearing to determine whether the probation report contains personal information. It then balances the defendant's interest in keeping this information confidential against any reasonable potential benefit to be gained by disclosing it and exercises discretion concerning whether to restrict or permit access. If it decides that restriction is appropriate, then the court may redact personal information from the report. Thereafter, the court should release the redacted report or the whole report if nothing is redacted.

In our view, this interpretation of section 1203.05 and the procedure we outline keep the statute properly focused on its remedial target—the loss of privacy concerning personal information contained in a probation report. It effectuates the legislative intent to restore a measure of privacy but does not go beyond that intent by permitting the court to restrict access to nonpersonal information. In this way, the statute continues to reaffirm the state's policy of openness.

Our interpretation also avoids serious questions concerning the constitutionality of the statute. Such problems usually arise when the right of access applies to a proceeding or record, and a statute *mandates* closure or nondisclosure, or when a court orders closure or nondisclosure without a finding of reasonable necessity to protect a compelling interest. (See *San Bernardino County Dept. of Public Social Services v. Superior Court, supra,* 232 Cal.App.3d at p. 197.) As discussed above, it is not entirely clear that the constitutional right of access applies to *all* information in a probation report. Moreover, as interpreted, the statute does not mandate nondisclosure of probation reports or even personal information contained in them. Under the statute, probation reports are open to everyone, including the media, for 60 days without restriction. Under our interpretation, the public continues to have unfettered access to nonpersonal information in the report, which, as noted, sheds the most light on the sentencing process, the participants, and the sentence in a particular case. And, insofar as the statute permits the redaction of personal information, redaction necessarily and implicitly reflects

the Legislature's determination that restoring a defendant's privacy concerning that information outweighs any *continued* right of access to that information. Indeed, the First Amendment right of access is flexible, not absolute, and gives way when necessary to preserve higher values of an overriding interest, such as protecting child victims of sex crimes from the trauma and embarrassment of public scrutiny, a defendant's right to a fair trial, the privacy interests of a prospective juror during individual voir dire, a witness from extreme embarrassment and intimidation that interferes with testimony, trade secrets, and privileged information. (*Press-Enterprise Co. v. Superior Court, supra*, 478 U.S. at pp. 13–14; *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, supra*, 20 Cal.4th at pp. 1206, 1222, and fn. 46.)

▇▇▇ Last, we offer the following guidance to trial courts concerning the petition procedure. Because a court's decision concerning whether to permit access to personal information may affect a defendant's right under the statute to conditional confidentiality, the decision implicates the defendant's right to procedural due process and therefore requires that he or she receive notice of the petition and an opportunity to be heard concerning whether there is personal information in the report and whether it should be redacted.[13] (See *People v. Sutton* (1993) 19 Cal.App.4th 795, 803 [23 Cal.Rptr.2d 632], citing, among others, *Fuentes v. Shevin* (1972) 407 U.S. 67, 80 [32 L.Ed.2d 556, 92 S.Ct. 1983] ["the central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard"].) ▇▇▇ In this regard, we note that in some cases, a defendant may have no objection to releasing the entire report. Under such circumstances, a hearing is unnecessary and would waste scarce judicial resources. Rather, the court should be able to summarily grant the petition without a hearing. Therefore, we consider it appropriate to place the burden on the defendant to object to a petition and seek a hearing. Of course, the defendant must also be advised of this burden. Accordingly, the petitioner must serve the defendant with not only a copy of the petition but also notice that the petition will be granted unless he or she formally objects and seeks a hearing.

▇▇▇ Concerning the hearing, we note that the court's determination may entail discussing the personal information that is potentially the object of redaction. Therefore, the court should hold the hearing on a petition in camera and outside the presence of the petitioner. The court must, however, create a record of the in camera hearing and make findings adequate to permit appellate review of its ruling.

▇▇▇ In determining whether a probation report contains personal information, the court should give the defendant an opportunity to identify the

---

[13] Apparently, here the News filed but did not serve its petition. The court postponed ruling on the petition until after defendant received notice and an opportunity to be heard.

information he or she wants redacted and explain why it should be redacted. The court should also consider whether the information identified by the defendant is available from other public documents, including the transcript of the sentencing hearing, the judgment, and any other documents available to the public. Then, in balancing the defendant's interests in confidentiality against any potential benefit from public access, the court may consider any relevant factors, including the age of the probation report; the potential impact disclosure may have on the defendant, his or her rehabilitation, and his or her family; the degree to which the information would contribute to public understanding of the sentencing process and the sentencing imposed; and the reasons why access is being sought.

In conclusion, we observe that the procedure we have outlined mirrors the procedures used in other contexts involving requests for access to confidential information and records—e.g., petition to inspect juvenile records (see *In re Keisha T., supra*, 38 Cal.App.4th 220; Cal. Rules of Court, rule 1423); motion to substitute appointed counsel (see *People v. Fierro* (1991) 1 Cal.4th 173 [3 Cal.Rptr.2d 426, 821 P.2d 1302]; *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]); motion for access to law enforcement personnel records (see *People v. Mooc* (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21]; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]; Evid. Code, §§ 1043, 1045); discovery requests concerning potentially privileged material (see *People v. Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139]) and the identity of an informant (see *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246]).[14] In granting the News's petition, the trial court did not employ the procedures outlined above but simply weighed defendant's constitutional right of privacy concerning the probation report against the News's common law right of access to it and concluded that the balance tipped in favor of the News. Under the circumstances, therefore, we believe a remand is appropriate.

---

[14] We note that in many of these other contexts, the Legislature has expressly prescribed the procedures to be followed and the burdens, if any, that each party must bear. For this reason, we invite the Legislature to revisit section 1203.05 so that it can establish the procedures that it finds will best effectuate its intent. (See also § 1203.10 [access to postjudgment probation records]; *McGuire v. Superior Court, supra*, 12 Cal.App.4th 1685.)

## VI. **Disposition**

The order granting the News's petition is reversed, and the matter is remanded for further proceedings.

Bamattre-Manoukian, Acting P. J., Mihara, J., concurred.