Filed 5/14/25  P. v. Singh CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B339738 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA104473) |
| v. | |
| HARMAN DEEP SINGH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joan M. Chrostek, Judge. Affirmed.

Law Office of Richard G. Cenci and Richard G. Cenci for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Harman Deep Singh appeals from the trial court's denial of his motion to vacate his conviction for felony carjacking and attempted carjacking. He argues he did not meaningfully understand the conviction would result in his deportation from the United States, and had he known, he would not have pled no contest to the charges. We perceive no error in the trial court's order, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      2014 Conviction**

In January 2014, Singh was charged with felony carjacking and other crimes. An amended felony complaint was filed in February 2014, charging Singh with seven counts: (1) carjacking with personal use of a deadly and dangerous weapon (Pen. Code, §§ 215, subd. (a),[1] 12022, subd. (b)(2)); (2) attempted second degree robbery with personal use of a deadly and dangerous weapon (Pen. Code, §§ 211, 664, 12022, subd. (b)(1)); (3) evading a peace officer (Veh. Code, § 2800.1, subd. (a)); (4) hit-and-run driving (Veh. Code, § 20002, subd. (a)); (5) resisting, obstructing, or delaying a peace officer (Pen. Code, § 148, subd. (a)(1)); (6) driving when privilege suspended or revoked (Veh. Code, § 14601.1, subd. (a)); and (7) attempted carjacking with personal use of a firearm (Pen. Code, §§ 215, subd. (a), 664, 1203.06, subd. (a)(1), 12022.53, subd. (b)). Counts 1, 2, and 7 were further alleged to be violent felonies (Pen. Code, § 667.5, subd. (c)) and serious felonies (Pen. Code, § 1192.7, subd. (c)). Finally, the amended complaint alleged Singh had two prior felony convictions. (Pen. Code, § 1203, subd. (e)(4).)

---

[1]      All further undesignated statutory references are to the Penal Code.

The charges arose from two incidents on January 24, 2014.[2] In the first, victim Paul M.,[3] who has a cleaning business, received an e-mail about a potential job. When Paul arrived at the purported jobsite in his work van, he parked and alighted. Singh approached him in a mask, aimed a handgun at his face, and demanded his keys. Paul resisted, and Singh fled on foot to a waiting vehicle. Later that day, victim Mike T. also responded in his work van to a supposed jobsite. While Mike was waiting in his van, Singh approached the driver's door with what appeared to be a handgun and demanded Mike's wallet. When Mike told Singh he had no wallet, Singh ordered him out of the van at gunpoint. Mike left the keys in the van's ignition. Singh got in the van and drove away. Police pursued Singh, who abandoned the van and fled on foot. The van collided with a house. When police apprehended Singh, they recovered a black pellet gun. Their investigation later revealed both victims had been recruited for fraudulent jobs.

On April 25, 2014, Singh accepted a negotiated plea agreement. He initialed, signed, and dated a felony advisement of rights, waiver, and plea form. The form advised Singh to "[i]nitial the box for each applicable item only if you understand and agree with it, and sign and date the form." He initialed a number of statements regarding his rights, the consequences of the plea,

---

[2]    The facts of Singh's offenses are taken from the probation report. (See *People v. Conner* (2004) 115 Cal.App.4th 669, 681 [restricted access to probation report is not directed to "nonpersonal information, such as the factual summary of an offense"]; see also Cal. Rules of Court, rule 8.320(d)(1)(G).)

[3]    We refer to Singh's victims by their first names and last initials. (See Cal. Rules of Court, rule 8.90(b)(4).)

and various terms of the plea. Singh specifically initialed the following paragraph: "**Immigration Consequences** – I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no context will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." He also initialed a box acknowledging that "[p]rior to entering this plea, I have had a full opportunity to discuss with my attorney . . . the consequences of my plea," and another indicating he had "no further questions of the Court or of counsel with regard to my plea(s) and admission(s) in this case." Finally, Singh signed the form under a paragraph stating he "ha[d] read and initialed each of the paragraphs above and discussed them with my attorney. My initials mean that I have read, underst[oo]d, and agree[d] with what is stated in [each] paragraph. The nature of the charges and possible defenses to them, and the effect of any special allegations and enhancements have been explained to me. I understand each and every one of the rights outlined above and I hereby waive and give up each of them in order to enter my plea to the above charges." Singh's attorney also signed the form, agreeing he had "reviewed [the plea] form with [his] client" and had "discussed . . . the consequences of the plea."

At the plea hearing, Singh affirmed he completed the form with the help of his attorney, and he understood all the rights and consequences in the document. He answered "yes" when asked if he understood that "if you are not a citizen of this country you must expect a plea of guilty or no contest will result in deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty."

As provided in the plea agreement, Singh pled no contest to counts 1 and 7 and admitted the personal gun use allegation; the remaining counts were dismissed. He was sentenced to eight years 10 months in state prison (five years on count 1, 10 months on count 7, and three years for the gun use enhancement) with 106 days of custody credits.

In November 2021, Singh petitioned the trial court for a writ of habeas corpus that was denied. Singh was released from prison to parole supervision in October 2022 and was discharged from parole one year later.

## II.      Motion for Section 1473.7 Relief

In March 2024, Singh filed a motion to vacate his conviction pursuant to section 1473.7. He argued the conviction was invalid for prejudicial error because he did not meaningfully understand, at the time of his plea, that it would result in his deportation from the United States. (See § 1473.7, subd. (a)(1).)

In support of his motion, Singh provided his own declaration. He averred he came to the United States around 1997 at the age of 10 years old, and he became a lawful permanent resident in 2002. His "primary language is Punjabi although [his] English has improved over time." During his 2014 criminal case, his public defender told him "that if [he] tried to fight the case [he] could get more prison time," so he "decided to plead guilty" to "get back to [his family]" as soon as possible. Singh said he believed his status as "a legal permanent resident of the United States" meant "that [he] could never be deported," and "there was never any discussion with [his] attorney about [his] status as a legal permanent resident." He also said his "attorney did not engage [him] in any discussion whatsoever of how [his] plea . . . would cause [him] significant immigration

5

consequences and were mandatory deportable crimes" and his "attorney never told [him] that [he] would be deported because of these charges."

Singh was thus "shocked" when "an immigration official visited [him]" in prison and "told [him] that [he] would be deported because [he] had been convicted of an aggravated felony."[4] If Singh knew he "could risk choosing to go to trial to protect [his] legal immigration status, [he] would have chosen to go to trial, because maintaining [his] immigration status . . . was the most important thing to [him]."

Singh also attached a number of documents to his motion, including documents related to his 2014 conviction (the felony advisement of rights plea form, the amended complaint, the abstract of judgment, and portions of the clerk's transcript), a notice of a federal immigration detainer, and copies of his permanent residence card, identity documents of family members, licenses and permits associated with his family's businesses, and a 2023 letter regarding his release from parole.

The trial court held a hearing on Singh's motion on June 3, 2024, at which Singh testified. Singh explained he had many family members living in the United States who are citizens, and he did not want to be separated from them by returning to India. He testified he did not speak English when he arrived in the United States in 1997, but he attended school in English for four

_____

[4] When a defendant is sentenced to more than one year for carjacking, the offense is an aggravated felony for which he is presumptively deportable. (See *People v. Padron* (2025) 109 Cal.App.5th 950, 960 (*Padron*) [carjacking]; *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073 (*Bravo*) ["One convicted of an aggravated felony is presumptively deportable."].)

6

years after his arrival. He said he "still [has] a hard time" with English: he can "speak a little bit better, but" he "[has] a hard time reading or understanding." Singh was questioned about whether he used an interpreter in his prior criminal cases. He said that during proceedings for a 2008 conviction, he asked for an interpreter but "they said they couldn't provide it." He also said he "believe[d]" he asked for an interpreter in connection with his 2014 conviction, but he did not remember what happened to that request. He said he did not remember if he asked for an interpreter on the day of his plea hearing in April 2014.

Singh testified that because of his limited "experience with . . . that kind of crime, [he] didn't really understand" the immigration consequences of the 2014 plea. He also stated, "they did not tell me nothing about my immigration status until I got to the prison[,] when they said I had an immigration hold and I could be getting deported." He denied his counsel told him he "could get deported or anything," but he also stated he did "not really" remember the day he pled guilty. Singh also did not remember whether he completed a plea form in 2014 or whether the trial court advised him of possible immigration consequences, but he asserted he did not understand those consequences when he entered his plea.

When confronted with the signed plea form, Singh said he did not know what it was, but his attorney at the time (whose name he did not remember) told him "that's the best deal he could get me, eight years, ten months," and "he said sign this and I signed it." Singh acknowledged he personally initialed the form and signed it. He also said he did not remember "when the judge took the plea [and] specifically showed [him] this form and asked

if [he] understood what was in the form and [he] initialled [*sic*] it," but Singh "believe[d]" he told the trial court he understood.

The trial court denied Singh's motion and reasoned as follows: "The court is unpersuaded by [Singh's] testimony. [Singh] was 27 years old when this occurred. He entered the United States in 1997. He had already previously been convicted of other crimes at that time. He had never requested for [*sic*] an interpreter. The court does believe that he did understand and knowingly waived his rights. [¶] As an aside, I don't know if this is relevant or not for whatever purposes, but [plea counsel is] a naturalized American citizen and I would, therefore, think that he would be careful about whatever kind of immigration consequences. I think all of the public defenders that appear in this courthouse have been excellent and would advise of that. I am unpersuaded by [Singh's] testimony and, therefore, under the preponderance standard, the court denies his motion."

The trial court's order denying Singh's motion was entered on June 3, 2024. Singh timely appealed. (See § 1237, subd. (b); Cal. Rules of Court, rule 8.308(a).)

## DISCUSSION

### I. The Trial Court Did Not Err in Denying Singh's Section 1473.7 Motion

"To prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); see also § 1473.7, subd. (a)(1).) That requires a defendant to make two showings: "first[,] that he did not

8

meaningfully understand the immigration consequences of his plea"; and second, "that his misunderstanding constituted prejudicial error." (*Espinoza*, at p. 319; see *People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*); see also § 1473.7, subd. (a).) "[T]he burden rests with the defendant to establish entitlement to relief." (*Espinoza*, at p. 325.)

We independently review the trial court's disposition of a section 1473.7 motion. (See *People v. Lopez* (2022) 83 Cal.App.5th 698, 710.) Under that standard, we " ' "exercise[] [our] independent judgment to determine whether the facts satisfy the rule of law." ' " (*Espinoza*, *supra*, 14 Cal.5th at pp. 319–320.) We "give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [trial court] heard and observed,' " ' " but we do not owe deference if "the trial court's findings 'derive entirely from written declarations and other documents.' " (*Id.* at p. 320; see *Vivar*, *supra*, 11 Cal.5th at p. 527 [independent review " ' "*is not* the equivalent of de novo review" ' "].) Because this trial court held an evidentiary hearing at which Singh testified, we defer to its determination Singh's testimony was unpersuasive. (See *Vivar*, at pp. 527–528.)

**A.    Singh Failed to Demonstrate He Did Not Meaningfully Understand the Consequences of His Plea**

The record supports the conclusion Singh understood he would be deported as a result of his 2014 plea. Before the plea hearing, he initialed and signed a form indicating he understood he "must expect my plea of guilty or no contest will result in my deportation," and he stated at the hearing he understood that

9

consequence.[5] (See *Bravo*, *supra*, 69 Cal.App.5th at p. 1073 [advisement for those with serious offenses mandating deportation must state " 'that they *will be* deported . . . as a *mandatory* consequence' "]; cf. *Espinoza*, *supra*, 14 Cal.5th at p. 320 [general advisement "that [the defendant's] conviction may have immigration consequences" was insufficient].) Singh cannot "simply ignore the admonitions he was given about the consequences of the plea[] and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing."[6] (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 663 (*Abdelsalam*).)

The only evidence suggesting Singh did not understand the immigration consequences of his plea is his own declaration to that effect, submitted in March 2024, and his testimony at the June 2024 hearing.[7] But this is insufficient by itself: "A

---

[5] That mandatory language distinguishes the cases cited in Singh's briefing, where the defendants were merely advised their convictions " 'may' have adverse immigration consequences." (*People v. Patterson* (2017) 2 Cal.5th 885, 895–896.)

[6] To the extent Singh argues he did not understand the advisements because they were in English, we are not convinced. While Singh's testimony could have amounted to some evidence he had issues understanding English, we defer to the trial court's factual finding his testimony on this and other topics was unpersuasive. (See *Espinoza*, *supra*, 14 Cal.5th at p. 320.) We also note the record shows he did not use an interpreter in his previous criminal proceedings.

[7] We reject Singh's argument, made without citation to the record, that the trial court refused to consider his declaration and

10

defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664.)

Singh failed to corroborate his account with independent evidence. (Cf. *Padron*, *supra,* 109 Cal.App.5th at p. 960 [defense counsel's notes said he advised the defendant "of 'potential' immigration consequences"]; *People v. Jung* (2020) 59 Cal.App.5th 842, 857–858 [the defendant corroborated claimed lack of understanding with contemporaneous evidence], disapproved on other grounds by *Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4.) On the contrary, the record reflects plea counsel "reviewed [the plea] form with [his] client" and "discussed . . . the consequences of the plea."[8] Moreover, the trial court has already

---

supporting evidence. On the contrary, the court's minute orders indicate the court read Singh's motion, supporting evidence, and the evidence submitted by the People, and considered Singh's testimony.

[8] We also reject Singh's suggestion the trial court wrongly assumed his plea counsel advised him of the immigration consequences without evidence. In context, the court's discussion of plea counsel's background (as an "aside" to which Singh did not object) simply reflected the well-settled presumption that counsel acts competently and complies with established law. (See *Padilla v. Kentucky* (2010) 559 U.S. 356, 367 ["when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear"]; *People v. Holt* (1997) 15 Cal.4th 619, 703 ["[w]e presume that counsel rendered adequate assistance"].) In fact, Singh has not argued plea counsel's assistance was ineffective.

determined Singh's testimony was not persuasive. (See *Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664 [" 'It is up to the trial court to determine whether the defendant's assertion is credible.' "]; see also *Espinoza*, *supra*, 14 Cal.5th at p. 325 ["the inquiry into a defendant's state of mind may often involve the weighing of credibility"].) We defer to that conclusion. (See *Espinoza*, at p. 320.)

While Singh is correct the waiver he signed and the plea colloquy "do[] 'not absolve defense counsel of the duty to advise of immigration consequences,' " (*Padron*, *supra*, 109 Cal.App.5th at p. 961), here there is no independent evidence plea counsel failed to so advise him. (See *Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664 ["Appellant has presented no independent evidence that he was told anything other than that he would be deported."]; cf. *Vivar*, *supra*, 11 Cal.5th at pp. 519, 523 [trial counsel's e-mails and notes suggested she told the defendant of possible (not mandatory) immigration consequences].) Singh therefore failed to carry his burden to demonstrate, by a preponderance of the evidence, that he did not meaningfully understand the consequences of his plea. (See *Abdelsalam*, at pp. 664–665.)

### B.     Singh Also Failed to Show Prejudice

While our analysis above is sufficient to affirm the trial court's order, we also note that Singh failed to show prejudice. In order to prevail on a section 1473.7 motion, a defendant must demonstrate "a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529; see also *id*. at pp. 529–530 [totality of the circumstances].)

Singh primarily argues his strong ties to the United States demonstrate prejudice. (See *Espinoza*, *supra*, 14 Cal.5th at p. 321

12

["Ties to the United States are an important factor in evaluating prejudicial error . . . because they shed light on a defendant's immigration priorities."].) He presented documentary evidence his family members are United States citizens and have businesses here, and he stated his family is important to him and he wants to continue to work at their businesses. But Singh's conclusory declaration does not establish he had "deep and long-standing ties to the United States . . . at the time of [his] guilty plea," (*id.* at p. 323), particularly in light of both the minimal independent evidence corroborating his community ties and the violent nature of his underlying criminal conduct. (Cf. *Padron*, *supra*, 109 Cal.App.5th at p. 963 [strong community ties "were substantiated by declarations from Padron's coworkers and family members"].)

Singh also argues he was prejudiced because he would have gone to trial rather than plead guilty to an offense for which he would surely be deported. But his own testimony suggests at the time of his plea, he was looking for the "best deal he could get." (See *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78 [courts look to contemporaneous evidence to determine the defendant's preferences at the time of the plea].) He has not shown any better plea deal was possible, let alone available. (See *Abdelsalam*, *supra*, 73 Cal.App.5th at p. 665 [the defendant did not offer an expert declaration regarding possible plea alternatives or evidence prosecutor would have offered those alternatives].) Nor has he identified evidence tending to suggest a meritorious defense to the charges he faced. (See *Lee v. United States* (2017) 582 U.S. 357, 367 ["Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one."].)

**DISPOSITION**

The trial court's order is affirmed.


RICHARDSON, J.

WE CONCUR:


LUI, P. J.


CHAVEZ, J.